

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-08-00037-CR
_____

BILLY RAY BRYANT, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 102nd Judicial District Court
Red River County, Texas
Trial Court No. CR01125

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

The multi-decades-old killings that were the subject of the capital murder conviction from which Billy Ray Bryant prosecutes this appeal evoke the kind of complicated and lurid story lines which might be seen in serialized prime-time soap operas. Perhaps if some of the participants in this drama had been named Ewing, we might otherwise believe the facts of this case to be an outline for a script from the 1980s *Dallas* television series, rather than a real capital murder appeal.

The background of this case involves one poor family that lives basically hand-to-mouth (much like the Barnes clan) and another relatively rich family that owns a ranch and cattle (much like the Ewings, but on a much smaller scale of wealth). The tales of violent murder are mixed with suggestions of wife swapping, insurance fraud, interstate narcotics and weapons trafficking, lying murder accomplices, dying medical examiners, the Texas Rangers, the Secret Service, the Aryan Brotherhood, and (unsurprisingly) extreme family estrangement. At one point, even the trial judge, the Honorable John F. Miller, Jr., suggested that the jurors consider writing a book about this case because its factual twists and turns might make the plot of an interesting novel.

The record shows Sarah Greer Raulston and Johnny Darryl Victory were gunned down in Johnny's home in1987. The murders went unsolved for nearly two decades, until a new sheriff, Red River County Sheriff Terry Reed, was elected. After he assumed office, Reed decided to reopen an examination of the apparently-moribund case of the Raulston and Victory murders. Reed worked with several people during this reopened investigation, including Eddy Almond (the Texas Ranger

2

who originally investigated the case in 1987), Roger Lough (the current Texas Ranger for the area), and Doctor Jeffrey Barnard (a pathologist who reviewed the 1987 autopsy notes made by the original county doctor and medical examiner who has since passed away). Reed also reinterviewed many witnesses, including the murdered Johnny's children—Aaron Victory (Aaron) and Dalinda Victory Claborn (Dalinda)—who were present in the house in 1987 when their married father and his girlfriend (Raulston) were shotgunned in front of them.[1] Reed and his fellow 2007 investigators ultimately learned that the children had remained silent during the intervening period about Bryant's involvement in the killings because they feared that Bryant would harm them or their families if they ever revealed what they had seen. Aaron (currently incarcerated in an Oklahoma prison) expressed fears of retribution once he returned to prison because he testified for the State in this case. The 2007 investigators also interviewed Mitchell Dickey, who had been convicted of a burglary that was related to the underlying murders.[2] It was during this interview that Dickey finally revealed Bryant's involvement in the murders after years of denying that neither he nor Bryant had any connection to the killings.

---

[1]According to evidence presented at trial, the kids were spared only because they promised never to identify the killers to anyone, including law enforcement.

[2]Apparently Dickey had been a murder suspect in 1987, but authorities felt there was insufficient evidence at the time to obtain a conviction for the weightier crimes.

In reliance upon the new evidence, Bryant was charged with capital murder and, after a trial, a petit jury found Bryant guilty.[3] Since the State did not seek the death penalty, Bryant received the mandatory sentence of life imprisonment. *See* TEX. PENAL CODE ANN. § 12.31 (Vernon Supp. 2008). Bryant now appeals, raising five separate issues. For the reasons set forth below, we conclude that some of his appellate issues were not preserved for appellate review and that the appellate record does not support a finding of reversible error with respect to his remaining issues. We, therefore, affirm the trial court's judgment.

## I. Dalinda's Rebuttal Testimony and "the Rule"

Bryant first contends the trial court erred by not instructing the jury to disregard Dalinda's rebuttal testimony after she allegedly heard courtroom testimony in violation of the Texas witness sequestration rule. The State contends that Bryant did not preserve this issue, that the appellate record does not affirmatively show Dalinda actually heard any other witnesses's testimony, and that if there was any error, it did not result in reversible harm.

The Texas Rules of Evidence state that "At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion." TEX. R. EVID. 614; *see also Russell v. State*, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005). This "witness sequestration rule" was once discretionary with trial courts, but its application is now mandatory upon proper request. *Wilson v. State*, 179 S.W.3d 240, 248 (Tex.

---

[3]*See* TEX. PENAL CODE ANN. § 19.03 (Vernon Supp. 2008).

App.—Texarkana 2005, no pet.) (citing *Moore v. State*, 882 S.W.2d 844, 848 (Tex. Crim. App. 1994)). A trial court errs if it fails to enforce a proper invocation of the witness sequestration rule. *See, e.g.*, *Russell*, 155 S.W.3d at 181. However, if error is shown, it is a "violation of an evidentiary rule, the error is non-constitutional, and will be disregarded unless it affected the appellant's substantial rights." *Russell*, 155 S.W.3d at 181 (citing TEX. R. APP. P. 44.2(b)).

A trial court's decision to admit testimony from a witness (even if that witness has heard others testify during the trial in violation of the witness sequestration rule) is reviewed for abuse of discretion. *Guerra v. State*, 771 S.W.2d 453, 474 (Tex. Crim. App. 1988); *Taylor v. State*, 173 S.W.3d 851, 853 (Tex. App.—Texarkana 2005, no pet.); *Potter v. State*, 74 S.W.3d 105, 110 (Tex. App.—Waco 2002, no pet.). Determining harm or prejudice by a witness's violation of Rule 614 is based on whether the witness's presence during other testimony resulted in harm to the defendant. *Webb v. State*, 766 S.W.2d 236, 240 (Tex. Crim. App. 1989); *Guerra*, 771 S.W.2d at 474–75; *Wilson*, 179 S.W.3d at 248–49. "Injury to the defendant is shown when two criteria are met: (a) whether the witness *actually conferred with or heard* testimony of other witnesses, and (b) whether the witness' testimony contradicted testimony of a witness from the opposing side or corroborated testimony of a witness with whom he or she had conferred or heard." *Wilson*, 179 S.W.3d at 249 (quoting *Webb*, 766 S.W.2d at 240) (emphasis added). The appellant has the burden to demonstrate the record supports a finding under both prongs. *Taylor*, 173 S.W.3d at 853.

5

Dalinda testified for the State during guilt/innocence. She was twice cross-examined by Bryant before being passed by the parties and allowed to step down from the witness stand. Although there was nothing formally or affirmatively pronounced by the trial court that Dalinda was excused from the rule, it seems to have been understood by the parties that she was; Bryant's counsel's later statements indicate that he believed her to have been excused. Thereafter, according to defense counsel's subsequent objection to her rebuttal testimony, Dalinda had remained in the courtroom during the remainder of the State's case-in-chief and had heard the testimony given by the remaining witnesses. Dalinda's rebuttal testimony, if believed by the jury, was quite damning to Bryant's case. In her second appearance on the witness stand, Dalinda specifically testified for the first time that Bryant was involved in the murder.

To have preserved this first issue, Bryant must have raised his sequestration violation objection in the trial court at the earliest possible moment. *See* TEX. R. APP. P. 33.1. This was not done at any of the following opportunities: (1) immediately after the State called Dalinda as a rebuttal witness; (2) during the State's direct examination of Dalinda on rebuttal; (3) during his cross-examination of Dalinda amidst rebuttal; or (4) before Dalinda stepped down from the witness stand, having completed her testimony. Instead, the record shows Bryant delayed making any claim of error until after both sides had fully rested and closed their evidentiary cases. This was too late to preserve error.

6

Even if Bryant had made a timely objection to her resumption of the witness stand, there is no direct, affirmative evidence in the record to show that Dalinda was present in the courtroom and heard the testimony given by other witnesses, an evidentiary absence affirmed by Bryant's counsel at oral argument. The trial court made a comment in response to Bryant's trial objection that suggested the judge had not himself seen Dalinda present in the courtroom in violation of the witness sequestration rule,[4] and Bryant brought forth no additional evidence or testimony (such as questioning her about this issue during her rebuttal testimony) to substantiate this bare-bones

---

[4]The trial court stated,

> The Court also would point out that this courtroom has been unusually full of spectators, parties of interest, you know, that are interested in the outcome of the case, as well as just public--the general public who have been attending the course of the trial. You know, and as far as even from the Court perspective as far as specifically being able to identify an individual seated out in the courtroom, it is difficult with the numbers of people that were here.

This statement suggests to us that the trial court had not personally observed Dalinda in the audience gallery during the testimony of the other witnesses during the previous day's proceedings.

7

assertion.[5]  Thus, Bryant would be unable on this record to satisfy his burden under the first prong

of the applicable analysis.  *See Wilson*, 179 S.W.3d at 249 (setting forth test); *Taylor*, 173 S.W.3d

at 853 (appellant has burden on appeal to satisfy both prongs).

We overrule Bryant's first issue.

## II.     Sheriff Reed's Double Hearsay Testimony

In his second point of error, Bryant contends the trial court erred by permitting Reed to testify

about a statement made to him by Janie Walls Mussett regarding something that Bryant said to

Mussett.  The State disagrees and maintains that the alleged error was not preserved for appellate

review.

If a party seeks to introduce testimony, it must first establish that such evidence is admissible

under our evidentiary rules.  *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992).  "The

proponent of hearsay testimony must point to a hearsay exception before the court can admit such

testimony." *Taylor v. State*, 263 S.W.3d 304, 309 (Tex. App.—Houston [1st Dist.] 2007), *aff'd*, 268

S.W.3d 571 (Tex. Crim. App. 2008) (citing *Perez v. State*, 113 S.W.3d 819, 827 n.4 (Tex.

App.—Austin 2003, pet. ref'd)).  The proponent of hearsay testimony has the burden of laying the

proper predicate and establishing its admissibility.  *Id.* (citing *Perez*, 113 S.W.3d at 827 n.4).  The

---

[5]For example, in *Delapaz v. State*, 229 S.W.3d 795, 801 (Tex. App.—Eastland 2007), *rev'd on other grounds*, No. PD-1168-07, 2008 WL 2437648 (Tex. Crim. App. June 18, 2008), the trial court conducted a short hearing to determine whether the at-issue witness had heard the testimony of other witnesses.  No similar intermediate hearing was requested by Bryant or conducted by the trial court in this case.

trial court must then determine the applicability of the proffered justification for the admission of hearsay testimony and, if additionally requested, perform the requisite relevancy balancing test by comparing the probative value of the hearsay testimony against its danger for unfair prejudice. *See, e.g.*, *Massey v. State*, 933 S.W.2d 582, 586–88 (Tex. App.—Houston [1st Dist.] 1996, no pet.); *and see* TEX. R. EVID. 403.

Ultimately, "[t]he admission of hearsay evidence is a question for the trial court to resolve and we review its determination under an abuse of discretion standard." *Maranda v. State*, 253 S.W.3d 762, 769 (Tex. App.—Amarillo 2007, pet. dism'd); *see Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002); *Mosley v. State*, 141 S.W.3d 816, 830 (Tex. App.—Texarkana 2004, pet. ref'd). A trial court abuses its discretion only when its determination of evidentiary admissibility or inadmissibility falls outside the zone of reasonable disagreement. *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008); *Mosley*, 141 S.W.3d at 830; *Breakiron v. State*, 79 S.W.3d 103, 107 (Tex. App.—Texarkana 2002, no pet.). The improper admission of hearsay evidence "does not constitute reversible error if the same facts are proved by other, properly admitted evidence." *Maranda*, 253 S.W.3d at 769 (quoting *Anderson v. State*, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986)).

During 1987, Mussett was dating Bryant, to whom she was subsequently married and then divorced. In 2007, as part of his review of the case, Reed interviewed Mussett extensively. At trial,

9

the State asked Reed to testify regarding what he had learned from Mussett during that 2007 interview:

> Q     [The State]  Now who did you talk to next?
>
> A     [Reed]  At that point we started interviewing the other eye witnesses that were there at the name [sic], saying Jonathan Victory. I talked to Janie Mussett, who was Bill Bryant's live-in at that time, and started talking to the family members. We were able to talk to those people and get, you know, whether it be audio statements or written statements that gave us probable cause to go ahead and get a warrant for Mr. Bryant for capital murder as well.
>
> Q     Now Janie Mussett, Janie Walls Mussett, the girl friend [sic], at one point in the interview she states to you . . .
>
> [Defense Counsel]:  Your Honor, we're going to object to leading questions, first. He can testify to whatever he can testify to.
>
> THE COURT:  Rephrase your question, Counsellor [sic].
>
> Q     [The State]  *At some point in time did she put Bill Bryant there at the scene as well?*
>
> A     *Yes, she did.*
>
> Q     *And did she inform you how she came about that knowledge?*
>
> A     *She informed us that . . .*
>
> [Defense Counsel]:  *Object to that as hearsay.*
>
> [The State]:  *Offer it as a statement against penal interest, and under 38.36.*
>
> THE COURT:  *The objection is overruled.*
>
> Q     [The State]  Go ahead.

10

A      [Reed]  *Okay.  In her statement she stated that Bill Bryant had told her after the murders that he and Kenneth Raulston had killed Johnny Victor and Sarah Raulston.*

Q      And did he tell her something else at that time?

A      *Yes, he made threats to her that if she was to tell anybody about that, that--I can't remember the exact phrasing of it but that, you know, she ran the risk of, you know, family members being hurt or she being hurt.*

(Emphasis added.)

Bryant lodged a proper and timely hearsay objection to Reed's testimony concerning Mussett's statement to him.  *See* TEX. R. EVID. 802.  An analysis of Reed's testimony reveals that it actually contains two layers of hearsay.  "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in [the Texas Rules of Evidence]."  TEX. R. EVID. 805.

The first layer of hearsay in this part of the testimony concerned what Bryant told Mussett.  His statement to Mussett about his involvement in the murders constituted a statement against Bryant's (the declarant's) penal interest.  *See* TEX. R. EVID. 803(24).  However, we then see that there was a second layer of hearsay—the testimony that concerned what Mussett told Reed.  In order to fall within the exception of Rule 803(24), this second testimonial layer would have needed to concern a statement made by Mussett against her own penal interest in this testimony.  Mussett's statement to Reed about Bryant's involvement in the murders would *not* constitute a statement against Mussett's (the declarant's) penal interest under Rule 803(24).

11

In this case, the second layer of hearsay did not constitute a statement against Mussett's penal interest.[6] Mussett's statement that Bryant admitted involvement in the murders would not subject Mussett to prosecution for those murders. Accordingly, this second layer of hearsay within Reed's testimony now at issue did not satisfy the requirements to be excepted from the hearsay rule pursuant to Rule 803(24). Therefore, the admission of Reed's double hearsay testimony was an abuse of the trial court's discretion. *Cf. Lopez v. State*, 200 S.W.3d 246, 254–55 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (trial court abused discretion by admitting double hearsay when part of statement did not qualify under exception to hearsay rule); *see also Rodgers v. State*, 111 S.W.3d 236, 243–44 (Tex. App.—Texarkana 2003, no pet.); *Robison v. State*, 35 S.W.3d 257, 261 (Tex. App.—Texarkana 2000, pet. ref'd). The usual next step would require us to evaluate this error for harm. *See* TEX. R. APP. P. 44.2(b) (nonconstitutional error); *see also*, *e.g.*, *Hernandez v. State*, 176 S.W.3d 821, 824–25 (Tex. Crim. App. 2005).

The State contends, however, that it is unnecessary for a harm analysis to be conducted pertaining to this error because Bryant waived this second issue for appellate review by failing to object to similar testimony from a subsequent witness, Mark Vandervlugt (an agent with the United States Secret Service). "If a defendant objects to the admission of evidence but the same evidence

---

[6]A statement against penal (or, more properly, "pecuniary") interest is one that would subject the declarant to prosecution based on his admission in that statement to having committed a crime. *See, e.g.*, *United States v. Watson*, 525 F.3d 583, 586 (7th Cir. 2008), *cert. denied*, __ U.S. __, 129 S.Ct. 972 (2009); *Walter v. State*, 267 S.W.3d 883, 890 (Tex. Crim. App. 2008).

12

is subsequently introduced from another source without objection, the defendant waives his earlier objection." *Massey*, 933 S.W.2d at 149.

After the trial court erroneously admitted Reed's testimony regarding Bryant's admission to Mussett, Vandervlugt testified also that Mussett had told him during an interview that Bryant had confessed to her that he had committed the murders:

> Q  [The State]  When the interview, did [Mussett] start out not wanting to tell the truth about what had happened?
>
> A  [Vandervlugt]  Correct.  Prior to the interview, she understood she was there voluntarily.  She was free to leave at any point in time.  Initially, she did not want to tell the truth.  *I would say approximately two hours into the interview, she became emotional.  Told us that Bill Bryant had confessed to her that he shot . . . .*
>
> Q  *Johnny Victory?*
>
> A  *Johnny Victory and Sarah Raulston.*
>
> Q  And was the statement that was obtained from her, I'm assuming that Texas Ranger Roger Laugh was the one that actually typed up the statement?
>
> A  He was the one that physically took the statement, written statement.
>
> Q  And was the statement read back to her, line by line?
>
> A  That, I'm not sure.  After she verbally confessed, the Ranger took a written statement and once they started the written statement, I left.
>
> Q  *Okay.  But you in fact heard her confess or tell you that . . .*
>
> A  *Correct.*

13

> Q      *. . . Bill Bryant had in fact shot and killed Sarah Raulston and Johnny*
> *Victory?*
>
> A      *Correct.*
>
> Q      And who are you employed by?
>
> A      The United States Secret Service.

(Emphasis added.)  Vandervlugt's testimony concerns what Mussett told investigators was said by Bryant.  Such testimony is clearly hearsay within hearsay.  *See* TEX. R. EVID. 805.  Like Reed's earlier testimony, the second layer of hearsay (what Mussett told Vandervlugt that Bryant had told to her) is not excluded from the hearsay rule by any exception (such as Rule 803(24)) because any statement by Mussett about Bryant's involvement in the murders would not likewise implicate her in those murders.  Bryant, however, did not renew the hearsay objection he had previously raised during Reed's substantially similar testimony.  Therefore, because the substantively equivalent testimony to which he had earlier objected was later admitted without objection, Bryant has not preserved this issue for appellate review.  *See Massey*, 933 S.W.2d at 149.

We overrule this second point of error.

## III.    A Limiting Instruction Regarding Reed's Hearsay Testimony

Bryant next contends the trial court erred by failing to instruct the jury that it should disregard the portion of Reed's testimony that contained hearsay.  The alleged hearsay testimony concerned a statement made by Jonathan Victory (a third child of Johnny, who was not a witness at trial) to Reed that was ultimately repeated by Reed before the jury.  Bryant now asserts he (1) objected to this

14

hearsay testimony at trial and (2) asked for a jury instruction to disregard the hearsay testimony. Bryant contends on appeal only that the trial court erred by failing to promulgate the requested jury instruction. The State asserts this alleged error was not preserved for appellate review.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Marshall v. State*, 210 S.W.3d 618, 631–33 (Tex. Crim. App. 2006). A trial court abuses its discretion if its decision to admit or exclude evidence falls outside the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). If a trial court rules that testimony heard by a jury should be excluded from the jury's consideration, the trial court should then (either upon request or sua sponte) direct the jury to disregard the at-issue testimony. *Lollis v. State*, 232 S.W.3d 803, 810 (Tex. App.—Texarkana 2007, pet. ref'd); *Mitchell v. State*, 191 S.W.3d 219, 223 (Tex. App.—San Antonio 2005, no pet.). Alternatively, should the trial court determine that the at-issue evidence may be admitted and considered by the jury only for a limited purpose, the trial court should give the jury an appropriate limiting instruction. TEX. R. EVID. 105; *Thacker v. State*, 999 S.W.2d 56, 61 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd).

"A defendant is entitled to an instruction limiting the jury's use of an extraneous offense not only in the jury charge but also at the time the evidence is admitted, if such an instruction is timely requested by the accused." *Pedersen v. State*, 237 S.W.3d 882, 887 (Tex. App.—Texarkana 2007, pet. ref'd) (quoting *Rankin v. State*, 974 S.W.2d 707, 713 (Tex. Crim. App. 1996)). "The failure to give such an instruction at the time the evidence is admitted is error when such an instruction has

15

been requested." *Id.* However, the requirement for a limiting instruction first presumes the trial court should have admitted the at-issue evidence. *See, e.g.*, *id.* at 888.

If the trial court erred by admitting the at-issue evidence and if the trial court did not issue a properly requested limiting instruction, such error will not result in reversal of the appellant's conviction unless the reviewing court is convinced that the error affected the appellant's substantial rights. *Id.*; *see also* TEX. R. APP. P. 44.2(b). This is because an error in the admission or exclusion of evidence (coupled with the failure to give a properly requested limiting instruction) is nonconstitutional error, review of which requires the overruling of the issue, despite such error, so long as "the appellate court, after examining the record as a whole, has a fair assurance that the error did not influence the jury, or had but slight effect." *Rankin v. State*, 995 S.W.3d 210, 215 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd); *see* TEX. R. APP. P. 44.2(b).

The specific exchange, now presented in the context in which it was heard by the jury, was as follows:

> Q      [The State]  And when you spoke with Jonathan Victory, did that give you more reason to focus in on Bill Bryant as well?
>
> A      [Reed]   Yes, Jonathan, he mainly focused on Mitchell Dickey; however, he did say that, you know, there was other people there and he believed that Bill Bryant was one of those people.
>
> [Defense Counsel]:   Judge, we're going to ask that the jury be instructed to disregard that answer as nonresponsive.  You know, I'm not sure what was done.  I'm not sure if he's testifying for other witnesses or something.
>
> [The State]:  These witnesses are available and will testify.

16

[Defense Counsel]: Well, and that's what they should do.

[The State]: He's testifying about what his investigation revealed to him.

[Defense Counsel]: *Well, he's trying to testify about what people may or may not have told him.*

THE COURT: *All right, rephrase your question, Mr. Varley, to personal knowledge.*

Q    What else did y'all do after you talked to Stella--not Stella--Janie Walls and Jonathan Victory? Did you attempt to talk to Stella Victory?

A    We went and tried to locate her and found that she passed away a year or two or three years previously to when we tried to locate her.

(Emphasis added.)

The trial court impliedly sustained Bryant's rather vague hearsay objection by ordering the State to rephrase its question. Bryant did not request that the jury be instructed to disregard hearsay. Instead, Bryant's limiting instruction request to the court went only to the issue of nonresponsiveness.

We do not believe the appellate record supports the view that the trial court was given an opportunity to address the issue now being raised on appeal. If the complaint (such as the failure to give a limiting instruction) was not first requested at the trial level, and if that request was not pursued to an adverse ruling, then the appellant has preserved nothing for our review. *Rankin*, 995

S.W.2d at 215; *see also Gone v. State*, 54 S.W.3d 27, 31–32 (Tex. App.—Texarkana 2001, pet. ref'd) (appellant's untimely request for limiting instruction preserved nothing for appellate review).

We conclude that Bryant did not preserve this issue for appellate review.[7]

## IV.    Ineffective Assistance

Bryant next contends that his trial counsel provided ineffective assistance because trial counsel (a) failed to object to the State having been allowed to treat Mussett as a hostile witness, (b) failed to object to inadmissible hearsay testimony by Mussett; (c) failed to object to the admission of impeachment evidence against Mussett, (d) failed to object to admission of testimony about polygraph results for two different witnesses, (e) failed to object to the State's improper closing argument in more than one instance, and (f) failed to object to the admission of other hearsay evidence.

To prevail on a claim of ineffective assistance, Bryant must demonstrate both (1) that trial counsel acted unreasonably under prevailing professional norms and (2) that this failure resulted in his having suffered actual prejudice. *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Acosta v. State*, 233 S.W.3d 349, 352 (Tex. Crim. App. 2007). When, as here, ineffective assistance is

[7]Bryant also suggests in his brief that the trial court's failure to provide a limiting instruction violated his Sixth Amendment right to confront Jonathan as a witness whose testimony was being used against him by the State. Bryant did not first raise this *Crawford* claim with the trial court. The claim has, therefore, not been preserved for appellate review and is overruled as such. *See Crawford v. Washington*, 541 U.S. 36 (2004); *cf. Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005); *Rios v. State*, 263 S.W.3d 1, 6–7 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd); *Bunton v. State*, 136 S.W.3d 355, 369 (Tex. App.—Austin 2004 pet. ref'd).

18

raised on direct appeal, appellate counsel and the court must proceed on a trial record not developed for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose. *Freeman v. State*, 125 S.W.3d 505, 506 (Tex. Crim. App. 2003); *cf. Massaro v. United States*, 538 U.S. 500, 504–05 (2003). Nonetheless, some claims may be disposed of on direct appeal where "trial counsel's ineffectiveness is so apparent from the record." *Massaro*, 538 U.S. at 508; *Freeman*, 125 S.W.3d at 507; *see also Andrews v. State*, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808, 814 n.6 (Tex. Crim. App. 1999). "[W]hen no reasonable trial strategy could justify the trial counsel's conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for acting as she did." *Andrews*, 159 S.W.3d at 102. A claim of ineffective assistance of counsel, on an undeveloped record on direct appeal, should, nonetheless, "be entertained and upheld if supported by the record." *Fuller v. State*, 224 S.W.3d 823, 828–29 (Tex. App.—Texarkana 2007, no pet.); *see Oldham v. State*, 977 S.W.2d 354, 360 (Tex. Crim. App. 1998). If the record on direct appeal is inadequate, habeas corpus is the more appropriate avenue for developing the record on this issue. *Moore v. State*, 227 S.W.3d 421, 426 n.1 (Tex. App.—Texarkana 2007, pet. ref'd). Moreover, if the appellate court can imagine a strategic motive to explain the ineffective assistance claim, then the reviewing court may not sustain the appellant's

19

point of error. *Freeman*, 125 S.W.3d at 511 (citing *Bone v. State*, 77 S.W.3d 828, 833 n.13 (Tex. Crim. App. 2002)).[8]

### A. Allowing the State To Lead Mussett on Direct Examination As a Hostile Witness

Bryant first argues that his trial counsel provided ineffective assistance because counsel did not object to the State having been allowed to treat Mussett as a hostile witness. Bryant asserts that the State knew before she took the stand that Mussett would become hostile, that Mussett would testify in a manner that was inconsistent with an earlier statement she gave to law enforcement (a statement in which she said Bryant had admitted to her his commission of the murders), and that (in reality) the State's sole purpose in calling Mussett was so that they could have the substance of that prior statement to law enforcement admitted as substantive evidence of Bryant's guilt since such a statement would be admissible as a prior inconsistent statement made by Mussett.

A party's request to treat a witness as hostile may arise from the realization that the witness would no longer be cooperative as expected. If the trial court faces a situation in which (1) a party has called a witness to testify, (2) that witness's testimony has surprised the sponsoring party, and

---

[8]In the review of claims of inadequate counsel, it has been said that "the presumption that trial counsel's performance was reasonably based in sound trial strategy, coupled with the absence of any supporting evidence in the record of unreasonableness, compels a reviewing court to consider ways in which trial counsel's actions were within the bounds of professional norms." *Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007). Further, "The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal." TEX. R. APP. P. 47.1. If we are to consider ways in which specific acts or omissions on the part of trial counsel might conceivably be deemed to be within the bounds of professional norms, we not only must consider those factors, we must also include an analysis of that consideration in the opinion we deliver.

(3) that testimony is otherwise injurious to the sponsoring party's cause, then the trial court has the discretion to permit the sponsoring party to treat the witness as hostile. *See* TEX. R. EVID. 611(a) & (c) (trial court shall exercise reasonable control over mode and order of interrogation of witnesses); *and cf. Wyatt v. State*, 23 S.W.3d 18, 28–29 (Tex. Crim. App. 2000) ("permitting leading questions on direct examination is a matter within the sound discretion of the trial court").

The State called Mussett to testify in its case-in-chief. The record shows that Mussett had previously given a sworn statement to law enforcement officials in which she inculpated Bryant in these murders. When it became apparent that Mussett would give testimony that was inconsistent with her earlier sworn statement, the State asked Mussett if she recalled making a statement in which she gave a factual account that was remarkably different from her trial testimony. Mussett answered, "Sir, a lot of things I said in that statement is [sic] not true, because I was scared." The State then asked permission from the trial court to treat Mussett as a hostile witness by asking leading questions. The trial court granted that request and Bryant's trial counsel did not object to that ruling.

The appellate record is silent regarding trial counsel's reasons for not objecting to the State's request to treat Mussett as a hostile witness. Nevertheless, in such a situation, Bryant's trial counsel might have reasonably chosen to not object so as not to bring any additional attention to Mussett's damaging testimony. *See, e.g.*, *Castoreno v. State*, 932 S.W.2d 597, 603 (Tex. App.—San Antonio 1996, pet. ref'd) ("possible that counsel made a conscious decision not to object to the use of the police report, as an objection would have drawn attention to relatively harmless evidence"). Such

21

a tactical decision might be part of a well-reasoned trial strategy. *See id.*; *cf. Brasher v. State*, 139 S.W.3d 369, 372 (Tex. App.—San Antonio 2004, pet. ref'd). Alternatively, Bryant's trial counsel may have reasonably believed the trial court's decision to allow Mussett to be treated as a hostile witness was within the trial court's discretion and was not the product of bad faith by the State. Bryant's trial counsel had the opportunity to gauge the jurors' reactions to Mussett's obvious hostility and he may have determined that those reactions were unfavorable for the State; relying upon those observations, he could have made the strategic decision not to interfere with the State's efforts at discrediting its own witness under the belief that destroying Mussett's credibility would be helpful to Bryant's case. Any of these reasons might explain a strategic motive behind this claimed instance of ineffective assistance. Thus, we may not sustain Bryant's point of error on this issue. *See Freeman*, 125 S.W.3d at 511.[9]

## B.      Admission of Mussett's Sworn Statement (State's Exhibit 39)

Bryant next contends that his trial counsel rendered ineffective assistance because counsel failed to object to the admission of Mussett's statement to police. Bryant claims this statement contained inadmissible hearsay. The at-issue statement was State's Exhibit 39, Mussett's previous sworn statement.

---

[9]We also note that our Rules of Evidence permit a party to impeach its own witness. TEX. R. EVID. 607. Therefore, to the extent that Bryant's complaint on this issue might reasonably encompass a claim that his trial counsel provided ineffective assistance by not objecting to the State's attempt to impeach its own witness through leading questions regarding an earlier inconsistent statement, such is expressly permitted under our Rules and would not support a finding of ineffectiveness.

The record shows that Bryant's counsel did object to the admission of this statement as a violation of the hearsay rule. Before the trial court admitted the exhibit, Bryant's trial counsel stated, "Your Honor, we would object as hearsay, not the best evidence." The trial court then overruled the hearsay objection to State's Exhibit 39.

Because the record refutes Bryant's claim that his trial counsel failed to object to State's Exhibit 39, we find no merit to this assertion of ineffective assistance.

C.      **Failure To Request a Limiting Instruction Regarding State's Exhibit 39**

Bryant next complains that his trial counsel rendered ineffective assistance by failing to request a limiting instruction regarding the admission of the sworn statement given by Mussett to investigators (State's Exhibit 39). The reporter's record shows the State offered Exhibit 39 pursuant to Rule 613(a) of the Texas Rules of Evidence. At trial, Mussett specifically denied that Exhibit 39 was truthful. The State then offered Exhibit 39 into evidence to impeach her. *See* TEX. R. EVID. 607. The relevant portion of Exhibit 39 included the following:

> Maybe a month later, Bill and I were at Stella's house where we were staying because our trailer house had burned. Stella was drinking and crying. Stella told me that Kenneth told her me [sic] that Thomas Stringer, Jim Ed Monkhouse, Lewis Perkins, Bill and Kenneth had killed Johnny and Sarah. *About a week later, Bill and I were in our bedroom. Bill said, "Me and Kenneth went to Kenneth and Sarah's house and shot and killed Johnny and Sarah." Bill also told me that there was a third shooter there but he did not tell me who the third person was. After Bill told me this, Bill told me that if I ever told anyone that he and Kenneth killed Johnny and Sarah, he would hurt me. I understood this to mean that he would hurt me, my children and my family.* [Paragraph initialed by Mussett.]

(Emphasis added.)

23

The thrust of Bryant's complaint of ineffective assistance is that his trial counsel should have requested an instruction directing the jury to confine its consideration of Exhibit 39 to whether that exhibit discredited Mussett's live witness testimony and, further, that the jury was to consider Exhibit 39 for no other purpose (such as substantive evidence of Bryant's guilt).

"A defendant is entitled to an instruction limiting a jury's use of an extraneous offense not only in the jury charge but also at the time the evidence is admitted if such an instruction is timely requested by the accused." *Pedersen*, 237 S.W.3d at 887 (quoting *Rankin*, 974 S.W.2d at 713). When evidence is properly admitted for one purpose, but can have meanings and uses beyond that proper purpose, "the trial court may--*and* should--immediately define and limit the jury's ability to consider such evidence to only those areas which are permitted under our Rules of Evidence." *Id.* at 888.

While many attorneys might have prudently requested such a limiting instruction, *see, e.g.*, *Boyd v. State*, 774 S.W.2d 37, 41–42 (Tex. App.—Beaumont 1989, pet. ref'd) (request for limiting instruction denied), it is equally possible that other reasonable and conscientious attorneys would have wanted Exhibit 39 available for consideration by the jury for a wider variety of reasons—such as substantive evidence to support Bryant's defensive theory that all the State's witnesses had been brow-beaten or intimidated by police investigators and federal agents into giving false statements implicating Bryant. Further, if the trial court had issued the limiting instruction now advanced by Bryant, the jury would have been unable to permissibly consider the impact that Exhibit 39 would

24

have had in support of this defensive theory advanced by Bryant throughout this trial. It should be remembered that Vandervlugt had already testified that Mussett did not come forth with any of these details until after she had endured two hours of interrogation by the Secret Service agent, and Mussett testified that she was intimidated into giving the statement against Bryant. Bryant's trial counsel might have decided that admission of State's Exhibit 39, without limitation, was necessary and relevant to Bryant's overarching defensive theory that the State's case was the product of fabrication and conspiracy.

Because we can imagine a reasonable, strategic reason to explain the complained-of conduct, we cannot say the appellate record will support Bryant's contention of ineffective assistance.

### D.     Polygraph Results

Bryant next complains that his trial counsel provided ineffective assistance by failing to object to two different references to the results of polygraph examinations. The Texas Court of Criminal Appeals has consistently ruled that polygraph results are generally inadmissible for any purpose. *Crawford v. State*, 617 S.W.2d 925, 930 (Tex. Crim. App. 1980); *Lewis v. State*, 500 S.W.2d 167, 168 (Tex. Crim. App. 1973) (referencing *Pulakis v. State*, 476 P.2d 474, 477–78 (Alaska 1970)).

The first reference to a polygraph examination came during Reed's testimony. Reed was discussing a polygraph examination administered by Vandervlugt to Dickey. Reed told the jury:

> A      [Sheriff Reed]  I talked to [Mitchell Dickey] again a day or two later, and he got emotional while he was talking to us that time, so I asked him would he

take a polygraph test. He agreed that he would do anything he could to help us on the case.

Q     [The State] Okay.

A     So we set up a polygraph test with a Secret Service agent from Irving. Agent came down, interviewed Mitchell, set him up for a polygraph test. *Mitchell Dickey took the polygraph test and at that time he failed it.* We reinterviewed him . . .

Q     *The way he failed it was he said he didn't have any knowledge of [the murder], he wasn't present [at the murder]?*

A     Correct. Correct. *You know, he indicated deception when he answered that he didn't have any knowledge of the crime.* We proceeded with the interview, told him that, you know, he failed, and at that point he said, "Pull up a chair," you know, and he began to confess and tell the details of the crime.

Q     Okay, and he confessed up to the point when they went by him with a gun, or . . .

A     He confessed to the point of saying that he was there with Kenneth Raulston and Bill Bryant, and that he was on the edge of the property and didn't participate in the actual shooting, but he was there and witnessed the whole event.

(Emphasis added.)

The second reference to a polygraph examination (and the examination's results) were made by the district attorney prosecuting this case at trial. The State's comment came amidst a speaking objection to a question asked of Vandervlugt on cross-examination.[10] The State's attorney stated,

---

[10]A "speaking objection" is "[a]n objection that contains more information (often in the form of argument) than needed by the judge to sustain or overrule it. Many judges prohibit lawyers from using speaking objections, and sometimes even from stating the grounds for objections, because of the potential for influencing the jury." BLACK'S LAW DICTIONARY 1103 (8th ed. 2004). Prosecutors should avoid using an evidentiary objection to inject new facts into the record when such assertions

"Your Honor, I'm going to object at this time. There's a federal law that prevents [Vandervlugt] from talking about what was performed on her at that time, the polygraph test."

The State suggests Bryant's trial counsel may have made the strategic decision to not object to these references to failed polygraph tests in hopes that the jury might use these failures as justification to not believe Dickey's or Mussett's testimony about *anything* to which they had testified. We agree that such a strategy is one among the wide range of professional norms that might seem reasonable. Accordingly, we cannot say this record, which is otherwise silent regarding trial counsel's failures to object to these polygraph examination references, will support a finding of ineffective assistance under *Strickland*'s first prong.[11]

### E.    Failure To Object to the State's Closing Argument

Bryant also contends his trial counsel provided ineffective assistance by failing to object to two improper comments made by the State during its closing argument. Jury argument should be limited in scope to (1) a summation of the admitted evidence, (2) reasonable deductions from the admitted evidence, (3) answers to the argument of opposing counsel, and/or (4) pleas for law enforcement. *Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997). Attorneys are granted "wide latitude in drawing inferences drawn from the evidence so long as the inferences are

are otherwise unsupported by properly admitted evidence.

[11]However, trial prosecutors—especially elected district attorneys—should always consider that their statutory mandate is "to see that justice is done." TEX. CODE CRIM. PROC. ANN. art. 2.01 (Vernon 2005). We question whether repeatedly referencing the forbidden subject of polygraphs and lie-detector examinations (as well as the results of such testing) advances that noble obligation.

reasonable and offered in good faith." *Id.* (referencing *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988)). "In determining whether jury argument is extreme or manifestly improper, we look at the entire record of final arguments to determine if there was a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial." *Id.* (quoting *Johnson v. State*, 604 S.W.2d 128, 135 (Tex. Crim. App. [Panel Op.] 1980)).

### (1) Comments on Bryant's Demeanor During Trial

The first complained-of instance arose during the State's opening summation of the evidence:

> Let me tell you something else. Not only can you watch what happens on this stand and get the demeanor of people. You have the right to sit here and watch this fellow here when he's sitting there. *And I don't know if any of you saw it, maybe some of you did, but when we were showing you pictures of the dead people, you know who was smiling in the courtroom? Do you know what that tells--that tells me something when you're looking at pictures of deceased people and he's getting a kick out of it.*

> You can take that all into consideration, too, when you decide he's guilty. Because after hearing all this evidence, even after twenty-one years, folks, we can still come in here and put him away, but we've got to have your help. And the big deal is that you have to be strong, too.

(Emphasis added.)

"[A] prosecutor may not properly comment upon the defendant's demeanor in the courtroom, since the defendant's demeanor in the courtroom is not evidence of guilt." *Wead v. State*, 129 S.W.3d 126, 130 n.8 (Tex. Crim. App. 2004) (quoting *Good v. State*, 723 S.W.2d 734, 737 (Tex. Crim. App. 1986)). The State's comment to the jury about Bryant smiling during the presentation of the pictures depicting the dead victims was patently improper. Such behavior runs precipitously

28

close to the line between a fair trial and a mistrial, depending on how the trial court chooses to exercise its discretion if faced with a meritorious motion for mistrial by defense counsel.

In this case, it is possible that Bryant's trial counsel did not wish to draw further emphasis to the State's improper remark by lodging a contemporaneous objection, especially in light of the trial court's written instruction that the jury was to consider only the evidence that was properly admitted by the trial court. *Cf. Dickerson v. State*, 87 S.W.3d 632, 638–39 (Tex. App.—San Antonio 2002, no pet.) (silent record would not support finding of ineffective assistance regarding prosecutor's patently improper closing remarks where defendant had opportunity to develop ineffective assistance claims in motion for new trial but failed to do so); *Castoreno*, 932 S.W.2d at 603 (possible that counsel decided to not object because objection would have emphasized evidence).

### (2)    Vouching for Witnesses

The second complained-of instance came during the State's closing summation:

Well, if you believe the defendant's lawyer, I guess I got together with all the law enforcement people in the Sheriff's office and the Texas Rangers and even reaching into the office of the Secret Service, and we had a big conspiracy, going to bring everybody in here and tell a lie, because everybody, he said, that got on the stand told y'all a lie, and we thought we would just throw a big trial and see if we couldn't get this guy convicted, although my job is [sic] a prosecutor is not prosecution. Number one, it's to see that justice is done, so we're all going to get together, if you believe what he's telling you, and get all these people to lie and then bring it in here and tell it to you.

You think that would fly? You think we're going to get into the Secret Service and the Texas Rangers and the Sheriff's office, and go even back in time with Jerry Conway and everybody, back in that time, and get everybody to come up here and lie to you?

29

*These folks told you the truth. And he talked to you about, you know, maybe a thousand times. Well, now they're here telling the truth, and I hope you believe they're telling the truth because they are telling you the truth at this point in time.*

Who has got something to lose? They don't have anything to gain by seeing this guy go to prison, other than the right to know that the guy that killed their daddy is in prison. They talked about Mitchell Dickey being the lynchpin of the case. He's really not. We could have stopped with Aaron [Victory]. I could have rested after Aaron, and the law would say that's factually sufficient to put him away for the rest of his life. That was enough for y'all to find him guilty, when Aaron said this is the guy that killed my daddy. So we need to think about that when you look at the big picture.

Not only do we have Mitchell. He is--you know, you wonder why he passed the--or failed the lie detector test this time? Maybe it's because he has a conscience now, and that's what those things work off of? If you have a conscience and you lie, you start sweating and your heart rate goes up and you flunk. And now he has a conscience and back then he didn't, and that's the reason he failed it this time when he has a conscience; and now he's here trying to let you know, hey, this is what happened.

Yeah, he'll benefit some. I'm not going to sit here and deny it. *He may not be telling you the whole truth, but I sure think he set the scene and put Bill Bryant there. I believe Bill Bryant was there. You should.* Kids put Bill Bryant there. There is no doubt he was hanging out, they was [sic] all together talking about killing them. And she said who is Tom on the tape, well, Tom is Bill. Tom is Bill. And I guess people can only stand being called a liar so long.

(Emphasis added.) Bryant argues about the above-emphasized passages, "The State's commentary of inappropriate bolstering/vouching about the credibility of its witnesses was not invited." Bryant also complains that the State should not have been permitted to interject his personal assessment of witness credibility into the trial.

30

We generally agree that a prosecutor should not interject his personal assessment of witness credibility into closing argument. Instead, a prosecutor should confine summation to the four proper areas of closing argument. In this case, however, Bryant's trial counsel might have made the decision not to object to the State's comments in summation because counsel had concluded that such comments were, in fact, made in response to counsel's own closing argument. For example, in his closing argument, Bryant's trial counsel argued,

> [Reed] also told you that in regard to Mr. Dickey's statement and regard to Janie's statement, yeah, nobody--there were no more tests administered. Once there was something about Bill Bryant, then we didn't need to check those any more.
>
> Dalinda Claborn? *I agree*, she was obviously upset. You know, how would you like to have it dredged up another twenty-one years down the road? Nobody would. That had to be incredibly difficult, *and I do appreciate that. I also appreciate the fact* that she has said well, it was Kenneth and it was Tom. She has said it was nobody. She has said I don't know who it was, and then she says I just don't know. I don't know. Under oath, she says I don't know.
>
> . . . .
>
> Janie Mussett, been out of Bill Bryant's life for years. Eighteen years, nineteen years. The State knew that she had changed her testimony, was going to change her testimony. When they voir dired, they talked about recanting testimony. Means changing it. She had never testified. She had never testified under oath. She got up here, took the oath to tell the truth, and said that statement is not right. Here is what's right. *And that takes a lot of nerve as far as I'm concerned*.
>
> . . . .
>
> You know, we talked about coercion. *I think* coercion is kind of in the eyes of the beholder. So you've got a United States Secret Service special agent read you your Miranda rights. You've got a Texas Range[r]. You've got a Sheriff in the room with you. You're a woman who is on parole, afraid you might go back to the

penitentiary, operating at a third grade level. Do you really think, yeah, I could just jump up here and leave any time I want to? [She] [s]tayed there six hours.

*I'm not much of a conspiracy believer, but it is kind of curious to me that they got a videotape of all that going on except for the statement when it was signed and except where she supposedly gave them that information. That's a concern to me, as to whether or not she believed she was coerced.*

(Emphasis added.)

While the appellate record does not indicate why Bryant's trial counsel failed to object to the State's inappropriate closing argument, it is at least possible that counsel made the strategic decision not to object, rather than risk having his objection overruled by the trial court if the court viewed the State's argument as responsive to defense counsel's own summation. We, therefore, are foreclosed from sustaining Bryant's *Strickland* claim of ineffective assistance in this instance.

F.       **Failure To Object to the Admission of Hearsay Evidence**

Finally, Bryant contends his trial counsel provided ineffective assistance by failing to object to the admission of otherwise inadmissible hearsay evidence during Dalinda's rebuttal testimony. The entirety of Bryant's argument on this subissue is as follows:

During her rebuttal testimony, Dalinda changed her testimony incriminating Mr. Bryant. . . . In explaining her reversal, Dalinda explained that her mother always tried to convince her that Mr. Bryant was not involved. . . . Then the State asked Dalinda, "[b]ut she (Stella Victory, Dalinda's mother) later told Jonathan that it was (Mr. Bryant). Dalinda replied, "Yeah. Yeah, and–well, I can't say that, but anyway, yeah." First, defense counsel should have objected to the State's question because it called for hearsay testimony. Further, if Dalinda did respond over the objection,

32

defense counsel should have asked the trial court for a motion to disregard her statement. From Dalinda's response, jurors may have thought that Ms. Victory told Jonathan that Mr. Bryant was involved in the offense.

(Bryant's internal record citations have been deleted.)

We do not believe the above-referenced testimony clearly shows Dalinda agreed with the State's assertion. Instead, she seemed to actually deny that her mother said to Jonathan that Bryant had been involved in the murders. Dalinda then followed that denial with a phrase from contemporary jargon—"but anyway, yeah"—a phrase that often means something of tacit disagreement with the other person's point of view, but amounts to disagreement being expressed in a way so as not to convey a sense of disagreeableness.

If one views Dalinda's testimony on this issue as something that equated a rejection of the State's factual assertion, then such testimony did not cause harm to Bryant's case and would not support a finding of ineffective assistance under *Strickland*'s second prong.

### G.     Cumulative Error

Finally, Bryant contends the cumulative effect of the preceding four issues resulted in the denial of constitutional due process. The entirety of the argument found in Bryant's briefing of this issue follows:

> The Court of Appeals has recognized the number of errors may be found harmful in their cumulative effect. *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999). Mr. Bryant respectfully submits to this Court that the cumulative effect of all of the above alleged errors (applicable to both trial court and trial counsel) has denied him due process and due course of law. Even if none of the

33

errors alone rise to the magnitude of a constitutional breach, their cumulative effect does. As such, Mr. Bryant asserts there is reversible error in this matter.

Our review of Bryant's first four issues reveals no reversible error. We similarly do not believe that these issues, when viewed cumulatively or in the aggregate, demonstrate reversible error. The Texas Court of Criminal Appeals stated in *Chamberlain* that "It is conceivable that a number of errors may be found harmful in their cumulative effect. But, we are aware of no authority holding that non-errors may in their cumulative effect cause error." 998 S.W.2d at 238. To the extent that Bryant has or has not adequately briefed this issue, we do not believe the record before us suggests the trial court denied him due process under the Federal or State Constitutions on the basis of the cumulative effect of the other assertions of error raised in this appeal.

We overrule each of Bryant's points of error and affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:    February 11, 2009
Date Decided:     March 13, 2009

Publish

34