COURT OF APPEALS

                                       SECOND DISTRICT OF TEXAS

                                                   FORT WORTH

 

 

                                        NO.
2-08-280-CR

 

 

JEROME CARR                                                                    APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I.  Introduction

Appellant
Jerome Carr appeals his conviction for aggravated robbery with a deadly
weapon.  After a jury found Appellant
guilty and assessed his punishment at eleven years=
confinement, the trial court sentenced him accordingly.  In four points, Appellant argues that he
received ineffective assistance of counsel. 
We will affirm.








II.  Factual Background

Carohn
Carroll and his roommate Aaron Watkins were arrested and taken to jail after
police searched their townhome and found drug paraphernalia in it.  Watkins confessed that the drug paraphernalia
was his, but police also arrested Carroll and took both men to jail.[2]  

The next
day, Carroll and Watkins were released, and they returned to the townhome.  Later that same day, Watkins went to a nearby
gas station to get a money order to pay rent, and Carroll headed upstairs to
shower and get ready for work. 

Carroll
heard a knock at the door and thought that Watkins had forgotten his keys.  Carroll looked out the peephole and saw a man
that he recognized but whose name he did not know; the man was later identified
as Wymie.  Carroll opened the door,
stepped outside, and closed the door. 
Carroll told Wymie that he and Watkins had been arrested the previous
night and that the police had said that anyone who entered the townhome would
go to jail.  While he was outside,
Carroll saw Carr standing against the wall. 
Carr and Wymie asked if Watkins was home, and Carroll opened the door
and yelled Watkins=s name to see if he had returned
while Carroll had been in the shower.








At that
point, Carr stepped inside the townhome, lifted his shirt, pulled out a black 9
mm handgun, cocked it, and put it to Carroll=s
head.  Carr pushed the gun into Carroll=s head
as he repeatedly asked, AWhere=s the
money at?  Where=s the
weed at?@  Carroll said that he did not owe Carr any
money.  Carr then put the gun to Carroll=s neck,
cursed a couple of times, and pulled the trigger, but the gun did not
fire.  Carroll said that Carr looked at
the gun like he was shocked, while Wymie stated that he was shocked that Carr
had pulled the trigger. 

An
altercation ensued, and Carroll escaped, jumping down the stairs and running
zig-zag through the parking lot so that he would not get shot.  While he was running, Carroll heard a bullet
hit the ground and saw Carr and Wymie looking at the gun.  Carroll caught the assistant manager of the
townhomes walking to her car and told her that Ahe tried
to kill me.@ 
The assistant manager pulled out her cell phone and called the
police.  While the assistant manager was
calling the police, she and Carroll saw Carr and Wymie leaving the area.

An
officer arrived Awithin seconds,@ and
Carroll gave the officer a summary of the events and a description of Carr and
Wymie.  Carroll gave the police a written
statement several days after the incident. 
After police arrested Carr, they videotaped an interview with him.








The jury
heard testimony from two of the officers who worked on the case, Carroll, and
Carr=s aunt[3]
and watched the videotaped interview of Carr; the jury found Carr guilty of
aggravated robbery with a deadly weapon as charged in the indictment.  After hearing the punishment evidence, the
jury assessed punishment at eleven years=
confinement, and the trial court sentenced Carr accordingly.  That same day, Carr filed his notice of
appeal.[4]

III.  Ineffective Assistance of Counsel Claims Not
Founded in the Record

All four
of Carr=s points
argue that he was denied effective assistance of counsel under both the United
States and Texas constitutions due to trial counsels= failure
to file a motion to suppress Carr=s
videotaped interview and failure to request a limiting instruction concerning
part of the interview.  The State argues
that the record is insufficient to overcome the presumption that defense
counsels= conduct
fell within the wide range of professional competent assistance. 

A.     Standard of Review








To
establish ineffective assistance of counsel, appellant must show by a
preponderance of the evidence that his counsels=
representation fell below the standard of prevailing professional norms and
that there is a reasonable probability that, but for counsels=
deficiency, the result of the trial would have been different.  Strickland v. Washington, 466 U.S.
668, 687, 104 S. Ct. 2052, 2064 (1984); Salinas v. State, 163 S.W.3d
734, 740 (Tex. Crim. App. 2005); Mallett v. State, 65 S.W.3d 59, 62B63 (Tex.
Crim. App. 2001); Thompson v. State, 9 S.W.3d 808, 812 (Tex.
Crim. App. 1999).








In
evaluating the effectiveness of counsel under the first prong, we look to the
totality of the representation and the particular circumstances of each
case.  Thompson, 9 S.W.3d at
813.  The issue is whether counsels=
assistance was reasonable under all the circumstances and prevailing
professional norms at the time of the alleged error.  See Strickland, 466 U.S. at 688B89, 104
S. Ct. at 2065.  Review of counsels=
representation is highly deferential, and the reviewing court indulges a strong
presumption that counsels= conduct fell within a wide
range of reasonable representation.  Salinas,
163 S.W.3d at 740; Mallett, 65 S.W.3d at 63.  A reviewing court will rarely be in a
position on direct appeal to fairly evaluate the merits of an ineffective
assistance claim.  Thompson, 9
S.W.3d at 813B14.  AIn the
majority of cases, the record on direct appeal is undeveloped and cannot
adequately reflect the motives behind trial counsel=s actions.@  Salinas, 163 S.W.3d at 740 (quoting Mallett,
65 S.W.3d at 63).  To overcome the
presumption of reasonable professional assistance, Aany
allegation of ineffectiveness must be firmly founded in the record, and the
record must affirmatively demonstrate the alleged ineffectiveness.@  Id. (quoting Thompson, 9 S.W.3d
at 813).  It is not appropriate for an
appellate court to simply infer ineffective assistance based upon unclear
portions of the record.  Mata v. State,
226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

The
second prong of Strickland requires a showing that counsels= errors
were so serious that they deprived the defendant of a fair trial, i.e., a trial
with a reliable result.  Strickland, 466
U.S. at 687, 104 S. Ct. at 2064.  In
other words, appellant must show there is a reasonable probability that, but
for counsels= unprofessional errors, the
result of the proceeding would have been different.  Id. at 694, 104 S. Ct. at 2068.  A reasonable probability is a probability
sufficient to undermine confidence in the outcome.  Id. 
The ultimate focus of our inquiry must be on the fundamental fairness of
the proceeding in which the result is being challenged.  Id. at 697, 104 S. Ct. at 2070.

B.     Trial Counsels=
Objections








During
the State=s direct examination of
Detective Danny Nutt, the State offered into evidence the videotaped interview
of Carr.  Before the State played the
videotape, defense counsel objected based on the Fifth Amendment, arguing that
Carr had not taken the stand and might not take the stand.  The trial court overruled this objection, and
the videotape was played for the jury. 
After the jury watched the video, defense counsel asserted a hearsay
objection to Detective Nutt=s
statements about what Wymie had said and requested an instruction to the jury
to disregard these statements.  The trial
court overruled this objection. 

The
State then concluded its direct examination of Detective Nutt.  After defense counsel cross-examined the
detective, passed the witness, and Detective Nutt was excused, defense counsel
indicated her desire to Ain an abundance of caution,@ Aput on
the record@ Aour
concern about the officer referring to information given to him by someone
else.@  When the trial court stated that it had
already ruled on this issue, defense counsel complained that Awe don=t have
an opportunity to confront, is our main concern.@  The trial court again indicated that it had
already ruled on this issue.

C.     Strickland Analysis








In his
first and second points, Carr argues that his trial counsel provided
ineffective assistance by failing to file a pretrial motion to suppress the
video.  Trial counsels= failure
to file a motion to suppress is not per se ineffective assistance of
counsel.  See Kimmelman v. Morrison,
477 U.S. 365, 384, 106 S. Ct. 2574, 2587 (1986); Hollis v. State, 219
S.W.3d 446, 456 (Tex. App.CAustin
2007, no pet.).  Counsel is not required
to engage in the filing of futile motions. 
Hollis, 219 S.W.3d at 456 (citing Mooney v. State, 817
S.W.2d 693, 698 (Tex. Crim. App. 1991)). 
Rather, to satisfy the Strickland test and prevail on an
ineffective assistance claim premised on counsels= failure
to file a motion to suppress, an appellant must show by a preponderance of the
evidence that the result of the proceeding would have been differentCi.e.,
that the motion to suppress would have been granted and that the remaining
evidence would have been insufficient to support his conviction.  Id. (citing Jackson v. State,
973 S.W.2d 954, 956B57 (Tex. Crim. App. 1998)). 








Carr
argues that if a motion to suppress had been filed, it would have been granted;
although Detective Nutt read Carr his rights, although Carr indicated that he
understood his rights, and although Carr then proceeded to answer the questions
propounded by Detective Nutt, Carr points out that he did not affirmatively
waive his rights before he made the statements. 
He contends that the statements were involuntary under article 38.22 of
the code of criminal procedure for this reason. 
See Tex. Code Crim. Proc. Ann. art. 38.22, ' 3
(Vernon 2005).  An express, affirmative verbal
statement from an accused indicating that he waives his rights is not required
in order for a custodial, oral statement to be admissible under article 38.22,
section 3.  See, e.g., Etheridge v.
State, 903 S.W.2d 1, 18 (Tex. Crim. App. 1994), cert. denied, 516
U.S. 920 (1995); Barefield v. State, 784 S.W.2d 38, 40B41 (Tex.
Crim. App. 1989), overruled on other grounds by Zimmerman v. State, 860
S.W.2d 89 (Tex. Crim. App. 1993) and cert. denied, 497 U.S. 1011 (1990).  Instead, in measuring the voluntariness of a
confession, courts look to the  totality
of the circumstances surrounding the making of the statement.  See, e.g., Griffin v. State, 765
S.W.2d 422, 427 (Tex. Crim. App. 1989). 
Frequently, when a defendant has been advised of his rights, indicates
that he understands his rights, and then chooses to proceed to answer
questions, from the totality of these circumstances it may be inferred that the
accused waived his rights.  See
Hargrove v. State, 162 S.W.3d 313, 318B19 (Tex.
App.CFort
Worth 2005, pet. ref=d); State v. Oliver, 29
S.W.3d 190, 193 (Tex. App.CSan Antonio
2000, pet. ref=d); Gomes v. State, 9
S.W.3d 373, 381 (Tex. App.CHouston
[14th Dist.] 1999, pet. ref=d).  Thus, because Carr received the required
statutory warnings, indicated that he understood them, and proceeded to answer
Detective Nutt=s questions, he has not
established that a motion to suppressCalleging
the involuntariness of his statements based on the lack of an affirmative
waiver of his rights, if filedCwould
have been granted.  See, e.g., Etheridge,
903 S.W.2d at 18; Hargrove, 162 S.W.3d at 318B19; Oliver,
29 S.W.3d at 193.








Moreover,
as mentioned above, Carr did not file a motion for new trial; therefore, no
record exists establishing defense counsels= reasons
for failing to file a motion to suppress.[5]  Nor does the record establish what evidence
the State would have presented had defense counsel filed a motion to
suppress.  It is entirely possible that
in this case defense counsel may have made a strategic decision not to file a
motion to suppress when they knew that it was unlikely to be granted.  See, e.g., Hollis, 219 S.W.3d at
456.  Thus, Carr=s claim
of ineffective assistance of counsel based on a failure to file a motion to
suppress cannot be sustained on this record. 
See Thompson, 9 S.W.3d at 813B14; Jackson,
973 S.W.2d at 957 (holding that appellant=s claim
of ineffective assistance could not be sustained based on the record before the
appellate court because appellant failed to develop facts and details of the
search sufficient to show that the search was invalid).








In his
third and fourth points, Carr argues that his trial counsel provided
ineffective assistance by not properly objecting to Carr=s videotaped
statement before it was admitted into evidence and by failing to request a
limiting instruction with regard to Detective Nutt=s
hearsay statements that Wymie had corroborated Carroll=s
version of the events, including that Carr had a pistol.  In the absence of evidence of trial counsels= reasons
for the challenged conduct, an appellate court Acommonly
will assume a strategic motivation if any can possibly be imagined.@  See Andrews v. State, 159 S.W.3d 98,
101 (Tex. Crim. App. 2005); Garcia v. State, 57 S.W.3d 436, 440 (Tex.
Crim. App. 2001), cert. denied, 537 U.S. 1195 (2003).  We will not conclude the challenged conduct
constituted deficient performance unless the conduct was so outrageous that no
competent attorney would have engaged in it. 
See Thompson, 9 S.W.3d at 814.








While
many attorneys might have prudently objected and requested such a limiting
instruction, it is equally possible that other reasonable and conscientious
attorneys would not have objected or requested a limiting instruction in order
to avoid drawing further attention to Wymie=s
statements.  See Ex parte
Varelas, 45 S.W.3d 627, 632 (Tex. Crim. App. 2001) (explaining failure to
request limiting instruction fell within the wide range of reasonable
professional assistance and that because such conduct might be sound trial
strategy, silent record did not satisfy appellant=s burden
under first Strickland prong); Bryant v. State, 282 S.W.3d 156,
171 (Tex. App.CTexarkana 2009, pet. ref=d)
(holding record did not support ineffective assistance claim when appellate
court could imagine a reasonable, strategic reason to explain trial counsel=s failure
to request a limiting instruction). 
Nothing in the record indicates what defense counsels= trial
strategy was.  Therefore, we cannot say
that the alleged ineffectiveness is firmly founded in the record or that the
record affirmatively demonstrates the alleged ineffectiveness.  See Thompson, 9 S.W.3d at
814.  Consequently, Carr has not met his
heavy burden to defeat the strong presumption that trial counsels= actions
fell within the wide range of reasonable professional assistance.  See Andrews, 159 S.W.3d at 101.








We
therefore hold that the record is insufficient to demonstrate that Carr=s trial
counsel rendered ineffective assistance on the grounds alleged by Carr.[6]  And because we have held that trial counsels= conduct
was not deficient under Strickland=s first
prong, we need not address the second prong of the Strickland test.  See Andrews, 159 S.W.3d at 101;
Rylander v. State, 101 S.W.3d 107, 110B11 (Tex.
Crim. App. 2003) (both stating that a failure to make a showing under either
prong of the Strickland test defeats a claim of ineffective assistance of
counsel).  We therefore overrule Carr=s four
points.

IV.  Conclusion

Having
overruled Carr=s four points, we affirm the
trial court=s judgment.

 

SUE WALKER

JUSTICE

 

PANEL:  GARDNER, WALKER, and
MCCOY, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  December 17, 2009











[1]See Tex. R. App. P. 47.4.





[2]Carroll testified that he
was never prosecuted for this offense.





[3]Carr=s aunt testified that
when she lived in Arlington, Carroll had come over to her house on several
occasions to smoke marijuana and that her boyfriend had taken food to Carroll
in exchange for marijuana.





[4]No motion for new trial
was filed.





[5]The record reveals that
defense counsel had notice from the State regarding the videotape approximately
four months before trial.





[6]As noted by the court in Jackson,
this is not unusual in cases of this sort:

 

Experience has taught us
that in most instances where the claim of ineffective assistance of counsel is
raised, the record on direct appeal is simply not in a shape, perhaps because
of the very alleged ineffectiveness below, that would adequately reflect the
failings of trial counsel.  Indeed, in a
case such as this, where the alleged derelictions primarily are errors of omission
de hors the record rather than commission revealed in the trial record,
collateral attack may be . . . the vehicle by which a thorough and detailed
examination of alleged ineffectiveness may be developed and spread upon a
record.

 

973
S.W.2d at 957.