

**NUMBERS** **13-13-00384-CR**
**13-13-00385-CR**
**13-13-00386-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**JUSTIN DALE BARTO,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

## On appeal from the 219th District Court
## of Collin County, Texas.

---

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Perkes**
**Memorandum Opinion by Justice Rodriguez**

A jury convicted appellant Justin Dale Barto of two counts of continuous sexual

abuse of a young child, a first-degree felony, *see* TEX. PENAL CODE ANN. § 21.02 (West

2011), and two counts of indecency with a child, a second-degree felony, *see id.* § 21.11(a)(1), (d) (West 2011), and sentenced him to life in prison for each continuous sexual abuse of a child conviction and twenty years in prison for each indecency with a child conviction.[1] The trial court ordered the sentences to run concurrently. By two issues, Barto contends that (1) the trial court abused its discretion when it admitted a CD with six images of child pornography; and (2) his counsel provided ineffective assistance. We affirm.[2]

## I. BACKGROUND[3]

The complainants in this case are B.H., A.H., and S.A.B. a/k/a S.B. (S.B.).[4] B.H. and A.H. are sisters. Barto, a family friend, and S.B. lived with B.H. and A.H.'s family intermittently during the time of the alleged abuse.[5]

On May 15, 2012, Barto was indicted on one count of indecency with a child that occurred on or about June 1, 2011 when Barto allegedly touched A.H.'s genital area with his hand. A second count for which Barto was indicted occurred over a thirty-day period or more between January 1, 2009 to December 31, 2009 when Barto allegedly continuously sexually abused S.B. A third offense occurred over a thirty-day period or more between September 15, 2007 to August 15, 2010 when Barto allegedly

---

[1] This case is before the Court on transfer from the Fifth Court of Appeals in Dallas pursuant to an order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

[2] Counsel briefed these appeals together, and we will address them in a single opinion.

[3] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

[4] To protect the identity of the children in our opinion we refer to them by their initials.

[5] Barto discovered that he was not S.B.'s biological father when she was two years old.

continuously sexually abused B.H. The fourth count for which Barto was indicted, indecency with a child, occurred on or about October 15, 2010 when Barto allegedly touched B.H.'s breasts with his hands.

At trial, B.H. testified that she was fifteen years old when she attempted suicide because of sexual abuse by Barto. When she woke up in the hospital, B.H. told hospital staff about Barto, and an investigation began. According to B.H., she was nine years old when Barto started putting his hand on her vagina over her clothes and moving it "up and down." By the time she was eleven or twelve, he was reaching under her shorts and underwear. B.H. estimated that Barto touched her vagina two or three times a week for four or five years and that when she was twelve or thirteen Barto started putting his fingers inside her vagina. When B.H. was thirteen, Barto would touch her breasts as well. Sometimes B.H. could feel Barto's penis when he pressed it against her or when he would "lay on top of [her]." B.H. testified that Barto handcuffed her and "hog tied" her with her hands and legs behind her back, then touched her after he untied her.

Chris Meehan, a sergeant with the Collin County Sherriff's Office, testified that he watched B.H.'s forensic interview through closed-circuit television as part of his investigation.[6] During the interview, B.H. reported that Barto put his fingers in her vagina, touched her breasts, laid on top of her, and put her hands on his penis. B.H. also described being handcuffed, having her hands and feet tied with shoelaces, and being molested after Barto untied her.

S.B. and A.H. also participated in forensic interviews and ultimately outcried about

---

[6] In addition to his duties with the Collin County Sherriff's Officer, Sergeant Meehan testified that he was "assigned to the United States Secret Service task force with their computer crimes division" and did "computer forensic exams on cell phones, computers, pretty much any type of electronic device."

abuse by Barto.  Both girls were nine years old at the time of trial.  A.H. testified that Barto was often at home when she arrived from school.  He watched movies on his computer and sometimes wanted her to watch the computer with him.  Barto showed A.H. movies of "kids without clothes on."  A.H. said that Barto gave her a "hurtful touch" on her "private."  According to A.H., Barto touched her "private" over her clothes with his hand, and he did it more than once.

At trial, S.B. testified that Barto touched her "private parts" under her clothes with both his hand and his penis.  According to S.B., sometimes white "ooze" came out of his "private" and got on her leg.  Barto was "mean" to her, calling her "bitch" and "slut." Barto spanked S.B. for no reason.  He sometimes had her watch movies on his computer of "girls taking off their shirts" and being spanked.  Sergeant Meehan explained that during her forensic interview, S.B. said that Barto touched her and penetrated her vagina with his finger.

Sergeant Meehan testified that after the forensic interviews were conducted at the Child Advocacy Center, he obtained an arrest warrant for Barto and a search warrant for his apartment.  From Barto's apartment, the police seized a laptop computer, several external hard drives, thumb drives, memory cards, and a cellular phone.  Sergeant Meehan testified that the electronics contained videos and pictures of B.H., A.H. and S.B., as well as images of child pornography and several pornographic videos.  Over Barto's objection, which included a 403 objection, the following exchange occurred between the State and Sergeant Meehan regarding the images found on the electronics seized from Barto's apartment:

4

Q. Okay. And then, Detective, throughout your investigation while you were doing the forensics, were there things throughout your investigation that the victims had mentioned and specific to the things that they had been shown that were of interest to you while looking at the forensics?

A. Yes.

Q. And did you find any images that were similar to what the victims described?

A. Yes.

Q. And what, specifically, are we talking about? Not the images just yet, but what specific things was it about those images?

A. That they had seen images or videos of children crying, of young children kissing, girls kissing, being handcuffed and tied up was some of the allegations that came out.

Q. Through your forensics did you find—where were they? Did you find any of those particular pictures?

A. Yes.

At a hearing outside the presence of the jury, the State offered a CD with twenty selected images of the child pornography found on the electronic devices seized by the police from Barto's apartment. Over Barto's rule 403 objection at the hearing and again at trial, the court admitted, as State's exhibit 36, six of the twenty images offered, including: (1) No. 2 (two young, nude girls kissing); No. 39 (two young girls kissing, one nude and one partially clothed); No. 51 (a nude, young girl being handcuffed to a bed by another nude, young girl); No. 69 (a nude, young girl looking at the camera and crying); and, No. 147 (same as No. 69).

A jury found Barto guilty of the four charged offenses and sentenced him to life in prison for each continuous-sexual-abuse-of-a-young-child offense and twenty years in

5

prison for each indecency-with-a-child offense, with the sentences to run concurrently. This appeal followed.

## II. Admission of Evidence

By his first issue, Barto contends that the admission of the child pornography images was substantially more prejudicial than probative. *See* TEX. R. EVID. 403. Barto argues that the probative value of these images was "very small" and the tendency to prejudice, "especially in a trial that was already emotionally volatile," was significant. He claims that the "photos accomplish[ed] nothing more than allow the jury to excite their emotions against [him]." Barto asserts that because the trial court admitted these images, harmful error occurred.

### A. Standard of Review

We review the trial court's decision regarding the admissibility of evidence for an abuse of discretion. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). A trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).

### B. Applicable Law

#### 1. Rule 403

Relevant evidence may be excluded under rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. "The term 'probative value' refers to the

inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence." *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007) (quoting *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006)). "Virtually all evidence that a party offers will be prejudicial to the opponent's case, or the party would not offer it." *Id.* at 883. "Unfair prejudice" refers to more than the fact that the evidence has an adverse or detrimental effect on the defendant's case. *Id.* It is "an undue tendency to suggest a decision on an improper basis, commonly an emotional one." *Id.*

### 2. Continuous Sexual Assault of a Young Child

To establish continuous sexual abuse of a young child, the State must prove that (1) a person (2) who is seventeen or older (3) has committed a series of two or more acts of sexual abuse (4) during a period of thirty or more days, and (5) each time the victim was younger than fourteen. TEX. PENAL CODE ANN. § 21.02(b). The underlying acts here supporting the allegations of this offense involve either indecency with a child, if the actor committed the offense in a manner other than by touching, or aggravated sexual assault of a child. *See id.* § 21.11(a); *id.* § 22.021(a)(1) & (2)(B) (West 2011).

### 3. Indecency with a Child

Regarding indecency with a child by contact, the penal code provides, "A person commits an offense if, with a child younger than 17 years of age, whether the child is of the same or opposite sex, the person . . . engages in sexual contact with the child or causes the child to engage in sexual contact." *Id.* § 21.11(a)(1). The offense requires

7

the specific intent to arouse or gratify the sexual desire of any person. *Id.* § 21.11(c). Specific intent can be inferred from the defendant's conduct, his remarks, and all surrounding circumstances. *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981); *Couchman v. State*, 3 S.W.3d 155, 163 (Tex. App.—Fort Worth 1999, pet. ref'd).

### 4. Aggravated Sexual Assault of a Child

The elements of aggravated sexual assault of a child applicable here are: a person commits an offense if the person (1) intentionally or knowingly (2) causes the penetration of the child's sexual organ by any means or causes the sexual organ of the child to contact the sexual organ of another person, including the actor, and (3) the child is under the age of fourteen. TEX. PENAL CODE ANN. §§ 22.021(a)(1)(B)(i) & (iii), 22.021(a)(2)(B).

## C. Analysis

### 1. Probative Value

Under rule 403, we first examine the probative force of the evidence in question and the State's need for the evidence. *See Casey*, 215 S.W.3d at 879; *see also* TEX. R. EVID. 403. In this case, the photographs had probative value as evidence of Barto's intent. He was charged with two counts of continuous sexual abuse of a young child, with indecency with a child as one of the underlying offenses. Barto was also charged with two counts of indecency with a child. The intent to arouse or gratify one's sexual desire is an element of indecency with a child. *See* TEX. PENAL CODE ANN. § 21.11(c). B.H. testified that, on one occasion, Barto handcuffed her to the bed and sometimes he would "hog-tie" B.H. with her hands and legs behind her back. From Barto's conduct and

8

surrounding circumstances, specifically his possession of pornographic pictures that included a young, handcuffed girl, the jury could have inferred Barto's specific intent to arouse himself or gratify a sexual desire when he handcuffed B.H. *See McKenzie*, 617 S.W.2d at 216; *Couchman*, 3 S.W.3d at 163. In addition, evidence that Barto possessed pornographic pictures of young, nude girls in sexual situations, such as images of nude girls crying and kissing, made it more likely that Barto's contact with the three girls was to arouse himself or to gratify his sexual desire rather than for any innocent purpose. Because there was no forensic evidence of the offenses, the State's need for this evidence was strong. It made more probable Barto's intent, which is a fact of consequence. *See Casey*, 215 S.W.3d at 879.

Additionally, the photographs corroborated the children's accounts that Barto had shown them pornographic images. The complainants in this case were young—two were nine years old at the time of trial and the third was sixteen. Two of the complainants were siblings. All three of the complainants knew each other and had lived together. In prosecutions for sexual offenses, a successful conviction often depends on whether the jury believes the complainant. *See Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002) (en banc); *see also Watkins v. State*, No. 02-12-00024-CR, 2013 WL 531062, at *4 (Tex. App.—Fort Worth Feb. 14, 2013, pet. ref'd) (per curiam) (mem. op., not designated for publication) (concluding that where a child complainant has described being shown pornographic images by the defendant, the images are admissible to corroborate the child's testimony). In their forensic interviews, according to Sergeant Meehan, the children explained "that they had seen images or videos of

children crying, or young children kissing, girls kissing." Although Sergeant Meehan acknowledged that the victims had not identified the photos admitted as the specific ones they were shown, the admitted photos were nonetheless similar to the photos the girls described. And when defense counsel asked the trial court for a specific finding as to why those images were admitted, the court specifically found that the pictures of young girls kissing and crying "reflect a description of what was testified to that was seen by one or more of the girls" and that the picture of the young girl in handcuffs shows "similarity between that and the description of what was done." A.H. and S.B. also described movies that Barto showed them on the computer of "kids without clothes on" or "girls taking off their shirts." S.B. also watched movies with Barto of girls being spanked. The images described on these movies are also similar to some of the images on the admitted photos. According to the complainants' respective testimony, no child observed Barto's activities with another, and thus, the six images were significant corroboration of events involved in the offenses and Barto's intent. We conclude the probative force of the evidence and the State's need for it were strong. *See Casey*, 215 S.W.3d at 879.

### 2. No Unfair Prejudice

Having concluded that the challenged evidence has probative value, we examine whether there was any unfair prejudice. *See* TEX. R. EVID. 403. In this case, Barto claims that he was unduly prejudiced because "the tendency [of the evidence] to prejudice, especially in a trial that was already emotionally volatile, was significant." *See Casey*, 215 S.W.3d at 879. We disagree.

Although evidence of sexual misconduct toward children is always inherently

10

inflammatory, *see Wheeler*, 67 S.W.3d at 889 (noting that "evidence of an extraneous sexual offense will always carry emotional weight and the danger of impressing the jury in an irrational and indelible way"); *see also Pawlak v. State*, No. PD-1616-12, 2013 WL 5220872, at *2 (Tex. Crim. App. Sept. 18, 2013) (not yet published), we cannot conclude that the images prejudiced Barto. The images here were not particularly graphic or gruesome. While undeniably pornographic, they did not display explicit sexual acts. The children were near the same age as the complainants, and the acts portrayed were much less disturbing than those already testified to by the complainants, including having their vaginas penetrated by Barto. It is unlikely that the jury would be more inflamed by the photos than by the children's own testimony. Moreover, the trial court admitted only six images out of the hundreds seized from Barto's apartment. *Cf. Pawlak*, 2013 WL 5220872, at *2 (finding admission of 9,000 images of child pornography inflammatory "by sheer volume"). We cannot conclude that the evidence had an adverse or detrimental effect on the case such that the jury's decision may have been made on an improper emotional basis, as Barto argues. *See Casey*, 215 S.W.3d at 883.

### 3. No Abuse of Discretion

The trial court's decision to admit the State's exhibit 36 was not "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *See Taylor*, 268 S.W.3d at 579. The complained-of evidence was probative because it tended to show Barto's intent to arouse or gratify his sexual desire. It was also probative to corroborate testimony regarding the girls' accounts of what occurred. We conclude that the trial court did not abuse its discretion by determining that the probative value of the

11

evidence was not substantially outweighed by the danger of unfair prejudice and admitting State's exhibit 36. *See* TEX. R. EVID. 403; *Cameron*, 241 S.W.3d at 19. We overrule Barto's first issue.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

By his second issue, Barto contends that his trial counsel failed to provide reasonably effective assistance because: (1) he made "no genuine effort to defeat the essential elements of the crimes" with which Barto was charged; and (2) he failed to present any evidence on Barto's behalf.[7] Barto claims that a review of the entire record fails to reveal "anything even resembling strategy." He asserts that instead "the record reveals the undeniable conclusion that trial counsel exerted no effort whatsoever in defending Barto" and "engaged in no meaningful defense" on his behalf.

### A. Standard of Review and Applicable Law

We review ineffective assistance of counsel claims under the two-pronged test articulated in *Strickland v. Washington*. 466 U.S. 668, 687 (1984); *see Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (en banc) (adopting *Strickland* as applicable standard under Texas Constitution). The first prong requires a showing that counsel's performance was deficient—that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The second prong of the *Strickland* test requires a showing that counsel's deficient performance prejudiced the defense—that counsel's errors were so serious as to deprive the defendant of a fair trial. *Id.* There is no reason for a court to approach an ineffective-assistance inquiry in the same order or even to address both components or

---

[7] Two attorneys represented Barto at trial. For ease of discussion we will refer to them as one.

prongs of the inquiry if the defendant makes an insufficient showing on one. *Id.* at 697; *see Cox v. State*, 389 S.W.3d 817, 819 (Tex. Crim. App. 2012) (concluding that a reviewing court need not consider both prongs of the *Strickland* test and can dispose of an ineffectiveness claim if the defendant fails to demonstrate sufficient prejudice).

Relevant to our analysis in this case, under the first prong, "[d]eficient performance means that 'counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.'" *Ex parte Napper*, 322 S.W.3d 202, 246 (Tex. Crim. App. 2010) (quoting *Strickland*, 466 U.S. at 687). Our review presumes that counsel's actions fell within the wide range of professional competence and could be considered sound trial strategy or the product of a tactical decision. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011); *see Strickland*, 466 U.S. at 689; *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.—Corpus Christi 2006, no pet.). We must consider the totality of counsel's representation and the circumstances of each case. *Lopez*, 343 S.W.3d at 143. On a silent record, this Court can find ineffective assistance of counsel only if the challenged conduct was so outrageous that no competent attorney would have engaged in it. *Mata v. State*, 226 S.W.3d 425, 428–29 (Tex. Crim. App. 2007); *Goodspeed v. State*, 187 S.W.3d 390, 392 0(Tex. Crim. App. 2005).

## A. Analysis

In support of his argument under the first prong of *Strickland*, Barto generally asserts, "No reasonable trial strategy could support trial counsel's overwhelming failure to present Barto with a reasonable defense at trial." More specifically, Barto complains that

hearsay and leading questions were "rampant." Yet he does not identify an example of either. And there are many strategic reasons why an attorney may choose not to object to hearsay, including exposing inconsistencies or concluding that an objection would be futile because the State could prove up an exception to the hearsay rule. *See Lopez*, 343 S.W.3d at 143. Similarly, there may be strategic reasons for not objecting to leading questions. *See, e.g., Bryant v. State*, 282 S.W.3d 156, 169 (Tex. App.—Texarkana 2009, pet. ref'd) (explaining that "Bryant's trial counsel might have reasonably chosen to not object so as not to bring any additional attention to Mussett's damaging testimony"). Barto also complains that counsel did not "meaningfully challenge" the credibility of the State's witnesses. However, the record does not suggest that there were grounds upon which to attack witness credibility or that there was any impeaching or exculpatory evidence that counsel did not present.

Barto also contends that counsel did not "meaningfully challenge" the State's case and did not present "a reasonable defense at trial." Yet he identifies no specific errors that counsel allegedly committed. Instead, our review of the record shows that Barto's trial counsel filed a number of pretrial motions, including a motion for production of Child Protective Services records and a motion to appoint a forensic computer expert. His strategy, apparent from voir dire through closing argument, was to challenge the credibility of the children. Counsel also contested the admission of the child pornography and other photos seized from Barto's apartment, obtaining a hearing outside the jury's presence and arguing numerous theories regarding why the evidence should not be admitted. In addition, counsel questioned Sergeant Meehan in front of the jury to

14

emphasize that there was no way to prove who placed the pornographic images on the hard drives. And while cross-examination of most witnesses was not extensive, counsel developed a clear theme used in closing argument regarding the complainants' inability to remember certain details. Finally, we note counsel clarified that Barto's possession of various weapons was not illegal and was, in fact, common for a private security guard, such as Barto.

Barto's complaints are simply too vague and generalized for us to determine that there was no strategic reason for counsel's actions. With no record of counsel's reasoning, we cannot determine that Barto's counsel was deficient in his representation. *See Strickland*, 466 U.S. at 687; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (holding that a reviewing court cannot determine that trial counsel was ineffective where there was no record of his reasoning). So presuming that counsel's actions fell within the wide range of professional competence and could be considered sound trial strategy or the product of a tactical decision, as we must, *see Lopez*, 343 S.W.3d at 142, we cannot conclude that counsel made errors so serious that he was not functioning as the counsel guaranteed Barto by the Sixth Amendment. *See Ex parte Napper*, 322 S.W.3d at 246. Considering the totality of counsel's representation and the circumstances of this case, *see Lopez*, 343 S.W.3d at 143, we conclude that Barto has not established, on the record before us, that his counsel's performance was deficient. *See Strickland*, 466 U.S. at 687. And on this silent record we cannot conclude that counsel's challenged conduct was so outrageous that no competent attorney would have engaged in it. *See Mata*, 226 S.W.3d at 428–29; *Goodspeed*, 187 S.W.3d at 392.

15

Barto failed to satisfy the first prong—the deficient-performance prong—of *Strickland*.

*See Strickland*, 466 U.S. at 687. Having so concluded, we need not address the second prong—the prejudice prong.[8] *See id.* at 697; *Cox*, 389 S.W.3d at 819; *see also* TEX. R. APP. P. 47.1. We overrule Barto's second issue.

### IV. CONCLUSION

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 6th
day of March, 2014.

---

[8] Although Barto's attempt at a direct appeal has been unsuccessful, he is not without a potential remedy. Challenges requiring development of a record to substantiate a claim, such as ineffective assistance of counsel, may be raised in an application for writ of habeas corpus. See TEX. CODE CRIM. PROC. ANN. art. 11.07 (West, Westlaw through 2013 Legis. Sess.); *Cooper v. State*, 45 S.W.3d 77, 82 (Tex. Crim. App. 2001) (en banc); *Ex parte Torres*, 943 S.W.2d 469, 476 (Tex. Crim. App. 1997) (en banc). An application for writ of habeas corpus relief would "provide an opportunity to conduct a dedicated hearing to consider the facts, circumstances, and rationale behind counsel's actions at . . . trial." *Thompson v. State*, 9 S.W.3d 808, 814–15 (Tex. Crim. App. 1999); *see Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011) ("This Court has repeatedly stated that claims of ineffective assistance of counsel are generally not successful on direct appeal and are more appropriately urged in a hearing on an application for a writ of habeas corpus."); *see also Ex parte Santana*, 227 S.W.3d 700, 704–05 (Tex. Crim. App. 2007).