ACCEPTED
06-14-00182-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
4/16/2015 10:53:39 AM
DEBBIE AUTREY
CLERK

**ORAL ARGUMENT WAIVED**

CAUSE NO. 06-14-00182-CR

IN THE

COURT OF APPEALS

SIXTH APPELLATE DISTRICT OF TEXAS AT TEXARKANA

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

4/16/2015 10:53:39 AM

DEBBIE AUTREY
Clerk

_____

ROBERT BRYAN FINCH, Appellant

V.

THE STATE OF TEXAS, Appellee

_____

ON APPEAL FROM THE 6TH JUDICIAL DISTRICT COURT
LAMAR COUNTY, TEXAS
TRIAL COURT NO. 25677; HONORABLE BILL HARRIS, JUDGE

_____

# APPELLEE'S (STATE'S) BRIEF

_____

Gary D. Young, County and District Attorney
Lamar County and District Attorney's Office
Lamar County Courthouse
119 North Main
Paris, Texas   75460
(903) 737-2470
(903) 737-2455 (fax)

**ATTORNEYS FOR THE STATE OF TEXAS**

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Tex. R. App. P. 38.2(a)(1)(A), the list of parties and counsel is not required to supplement or correct the appellant's list.

# TABLE OF CONTENTS

**PAGE NO.:**

IDENTITY OF PARTIES AND COUNSEL . . . . . . . . . . . . . . .     i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . .     ii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . .     iv

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . .     vii

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . .     viii

ISSUE PRESENTED IN REPLY   . . . . . . . . . . . . . . . . . . . . .     ix

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . .     2

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . .     13

ARGUMENT AND AUTHORITIES

**ISSUE PRESENTED IN REPLY NO. 1:   WHEN
POTENTIAL JURORS SAW FINCH UNDER PHYSICAL
RESTRAINT OUTSIDE THE COURTROOM, THE
TRIAL COURT DID NOT ABUSE ITS DISCRETION IN
DENYING THE APPELLANT'S MOTION FOR MISTRIAL
BECAUSE SUCH AN ENCOUNTER WAS INADVERTENT,
FORTUITOUS AND AWAY FROM THE COURTROOM;
THERE WAS NO ERROR, AND THERE WAS
NO HARM.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     14

**ISSUE PRESENTED IN REPLY NO. 2:  THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DECIDING TO ADMIT THE TESTIMONY OF THE APPELLANT'S MOTHER, ANGIE ROSSON, BECAUSE IT BALANCED THE INTERESTS OF THE STATE AND THE ACCUSED, CONSIDERED ALTERNATIVE SANCTIONS AND CONSIDERED THE BENEFIT AND DETRIMENT ARISING FROM A DISQUALIFICATION IN LIGHT OF THE NATURE AND WEIGHT OF THE TESTIMONY TO BE OFFERED; IN THE ALTERNATIVE, FINCH COULD NOT SHOW HARM.** . . . . . . . . . . . .   19

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . .   26

CERTIFICATE OF SERVICE  . . . . . . . . . . . . . . . . . . . . . . . . .   26

# INDEX OF AUTHORITIES

**CASES:**                                                  **PAGE:**

*Bell v. State*, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996) . . . . . . . .    20,22

*Boyington v. State*, 787 S.W.2d 469, 471 (Tex. App.--
Houston [14[th] Dist.] 1990, pet. ref'd) . . . . . . . . . . . . . . . . .    18

*Bryant v. State*, 282 S.W.3d 156, 161, 162 (Tex. App.--Texarkana
2009, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20,21, 22

*Coleman v. State*, 652 S.W.2d 205, 207 (Tex. App.--
Houston [14[th] Dist.] 1982, pet. ref'd) . . . . . . . . . . . . . . . . .    17

*Garza v. State*, 10 S.W.3d 765, 767, 768 (Tex. App.--Corpus Christi
2000, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    19

*Guerra v. State*, 771 S.W.2d 453, 474, 475 (Tex. Crim.
App. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    21,22

*Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim.
App. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15

*Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999) . . . . . . .    15

*Martinez v. State*, 186 S.W.3d 59, 65 (Tex. App.--Houston
[1[st] Dist.] 2005, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . .   20,21,22

*Moore v. State*, 882 S.W.2d 844, 848 (Tex. Crim. App. 1994) . . . .    20

*Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim.
App. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14,15,17,18

*Pina v. State*, 38 S.W.3d 730, 733, 740, 741 (Tex. App.--
Texarkana 2001, pet. ref'd) . . . . . . . . . . . . . . . . . . . 14,15,16,17,18,19

**CASES:** **PAGE:**

*Potter v. State*, 74 S.W.3d 105, 110 (Tex. App.--Waco
2002, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Routier v. State*, 112 S.W.3d 554, 590 (Tex. Crim. App. 2003),
*cert. denied*, 541 U.S. 1040, 124 S.Ct. 2157, 158
L.Ed.2d 728 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Russell v. State*, 155 S.W.3d 176, 181 (Tex. Crim.
App. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Taylor v. State*, 173 S.W.3d 851, 853 (Tex. App.--Texarkana
2005, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21,22

*Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). . . . . 15,18

*Webb v. State*, 766 S.W.2d 236, 240, 244 (Tex. Crim.
App. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21,22,23

*Wilson v. State*, 179 S.W.3d 240, 248, 249 (Tex. App.--Texarkana
2005, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22

*Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000) . . . . . 15

**STATUTES:**                                                           **PAGE:**

TEX. CODE CRIM. PROC. ANN. ART. 36.06 (Vernon 2007) . . .     21

TEX. PENAL CODE ANN. § 31.03(e)(4)(D) (West
    Supp. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     4

TEX. R. APP. P. 38.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     viii

TEX. R. APP. P. 38.2(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . .     i

TEX. R. APP. P. 44.0(b)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     21

TEX. R. APP. P. 44.2(b)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     24

TEX. R. EVID. 614 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     20,21

## STATEMENT OF THE CASE

This is a criminal appeal from the trial court's final judgment of conviction for the state-jail felony offense of theft of property of a value less than $1,500.00 with two or more prior convictions. *See* CR, pgs. 109-110.

A grand jury in Lamar County charged Finch with the offense of theft of property of a value less than $1,500.00 with two (2) or more prior convictions. *See* CR, pg. 5. After a jury trial, a petit jury found Finch guilty of the offense, as alleged in the indictment. *See* RR, Vol. 6, pg. 133; CR, pg. 93. The jury also found all of the prior convictions were true, as alleged in the indictment. *See* RR, Vol. 6, pg. 133.

Following the punishment phase, the same petit jury assessed punishment at two (2) confinement in the Texas Department of Criminal Justice -- State Jail Division with a fine of $10,000.00. *See* RR, Vol. 6, pg. 234; CR, pg. 99. After the court pronounced sentence (RR, Vol. 6, pg. 236), the trial court signed its Judgment of Conviction by Jury (CR, pgs. 109-110) and its Certification of Defendant's Right of Appeal. *See* CR, pg. 107.

Finch filed his notice of appeal. *See* CR, pg. 104. By this appeal, Finch brought two (2) issues/points of error.

## STATEMENT REGARDING ORAL ARGUMENT

The State will waive oral argument. *See* Tex. R. App. P. 38.2.

## ISSUES PRESENTED IN REPLY

**ISSUE PRESENTED IN REPLY NO. 1:** WHEN POTENTIAL JURORS SAW FINCH UNDER PHYSICAL RESTRAINT OUTSIDE THE COURTROOM, THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE APPELLANT'S MOTION FOR MISTRIAL BECAUSE SUCH AN ENCOUNTER WAS INADVERTENT, FORTUITOUS AND AWAY FROM THE COURTROOM; THERE WAS NO ERROR, AND THERE WAS NO HARM.

**ISSUE PRESENTED IN REPLY NO. 2:** THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DECIDING TO ADMIT THE TESTIMONY OF THE APPELLANT'S MOTHER, ANGIE ROSSON, BECAUSE IT BALANCED THE INTERESTS OF THE STATE AND THE ACCUSED, CONSIDERED ALTERNATIVE SANCTIONS AND CONSIDERED THE BENEFIT AND DETRIMENT ARISING FROM A DISQUALIFICATION IN LIGHT OF THE NATURE AND WEIGHT OF THE TESTIMONY TO BE OFFERED; IN THE ALTERNATIVE, FINCH COULD NOT SHOW HARM.

CAUSE NO. 06-14-00182-CR

IN THE

COURT OF APPEALS

SIXTH APPELLATE DISTRICT OF TEXAS AT TEXARKANA
_____

ROBERT BRYAN FINCH, Appellant

V.

THE STATE OF TEXAS, Appellee
_____

ON APPEAL FROM THE 6TH JUDICIAL DISTRICT COURT
LAMAR COUNTY, TEXAS
TRIAL COURT NO. 25677; HONORABLE BILL HARRIS, JUDGE
_____

# APPELLEE'S (STATE'S) BRIEF
_____

TO THE HONORABLE SIXTH COURT OF APPEALS:

COMES NOW, the State of Texas, by and through the elected County and District Attorney of Lamar County, Gary D. Young, and the Lamar County and District Attorney's Office, respectfully submits its Appellee's (State's) Brief under Rule 38.2 of the Texas Rules of Appellate Procedure.

Unless otherwise indicated, Robert Bryan Finch will be referred to as "the appellant" or "Finch" and the State of Texas as "the State."

**Factual Background.**

On February 23, 2014, Dustin Calhoun (Calhoun), who worked for Wal-Mart in asset protection for about a year and six months (RR, Vol. 6, pg. 39), got a phone call that a cashier had "just seen someone take a chain saw and run out the door." *See* RR, Vol. 6, pg. 40. After they asked him for a receipt, the suspect took off running. *See* RR, Vol. 6, pg. 40. Calhoun "went and watched the videotape" and he saw that "the suspect came in, under a minute, grabbed the chain saw, walked past the register and [took] off running." *See* RR, Vol. 6, pg. 41. *See also* RR, Vol. 6, pgs. 46-47, 53; State's Exhibits 1, 2 and 8. The suspect left in a red pickup. *See* RR, Vol. 6, pgs. 47-48 ("He gets in it and leaves.").

Calhoun grabbed the cheapest chain saw and made a receipt for $167.00. *See* RR, Vol. 6, pgs. 51-52; State's Exhibit 3. The receipt was evidence of how much it cost. *See* RR, Vol. 6, pg. 52.

After Calhoun made the surveillance video, he "called the cops." *See* RR, Vol. 6, pg. 51. Officer Sean Upchurch, who worked for the Paris Police Department for about "a year and a half," (Officer Upchurch) was working on February 23, 2014. *See* RR, Vol. 6, pg. 56. Officer Upchurch was

dispatched to the theft of a chain saw.  *See* RR, Vol. 6, pg. 57.

Officer Upchurch arrived there and reviewed the surveillance video and the still photos.  *See* RR, Vol. 6, pgs. 51, 57, 64-65; State's Exhibits 1, 2. Officer Upchurch took Calhoun's statement.  *See* RR, Vol. 6, pg. 51.  With the still photos, Officer Upchurch sent an e-mail to all the officers  with the photographs to identify the suspect.  *See* RR, Vol. 6, pg. 58.

### Unrelated Arrest of a Suspect on February 26, 2014.

On the night of February 26, 2014, officer Upchurch arrested "Robert Bryan Finch" on an unrelated charge.  *See* RR, Vol. 6, pg. 58.  While speaking to him, officer Upchurch noticed a piece of yellow duct tape on his eyeglasses.  *See* RR, Vol. 6, pgs. 58, 65.  "It appeared to be the same tape that was on the glasses the night of the theft."  *See* RR, Vol. 6, pg. 58.

Whenever officer Upchurch sent an e-mail to all the officers, he received an e-mail back that named the suspect as "Robert Bryan Finch." *See* RR, Vol. 6, pg. 59.  On the night of February 26th, officer Upchurch took pictures of Finch.  *See* RR, Vol. 6, pg. 59; State's Exhibits 4-7.  Also that night, officer Upchurch took some photographs of a pickup.  *See* RR, Vol. 6, pgs. 60, 62; State's Exhibit 6.  Previously, officer Upchurch had seen the truck in the videotape.  *See* RR, Vol. 6, pg. 62.

Officer Upchurch read the *Miranda* rights, and Finch waived his rights by agreeing to speak to officer Upchurch. *See* RR, Vol. 6, pg. 63. That night, Finch did not admit to stealing the chain saw. *See* RR, Vol. 6, pg. 63.

On February 23rd, Tommy Moore, a detective at the Paris Police Department for fifteen years, (Detective Moore) also spoke with Finch. *See* RR, Vol. 6, pgs. 72-73. Detective Leigh Foreman actually read the *Miranda* warnings; and again, Finch waived his rights. *See* RR, Vol. 6, pgs. 74-75. The interview was recorded. *See* RR, Vol. 6, pgs. 75-76; State's Exhibit 9. During this interview with Detective Moore, Finch admitted to taking chain saw because "[h]e needed gas money." *See* RR, Vol. 6, pg. 87.

Subsequently, a grand jury in Lamar County returned an original indictment that charged Finch with theft of property less than $1,500.00 with two prior convictions. *See* CR, pg. 5; RR, Vol. 6, pg. 30. *See also* Tex. Penal Code Ann. § 31.03(e)(4)(D) (West Supp. 2014).

**<u>Voir Dire Proceedings and Jury Trial</u>.**

On September 29, 2014, the trial court called cause number 25677, which was "set for jury trial this morning." *See* RR, Vol. 5, pg. 4. After an exchange with the defendant (Finch), the trial judge introduced himself to

-4-

the venire panel as the judge for the County Court at Law but would be presiding in court today for the 6th District Court. *See* RR, Vol. 5, pg. 14. After hearing disqualifications, exemptions or excuses from individual jurors (RR, Vol. 5, pgs. 14-43), the trial court instructed the remaining jurors that "we're going to have to put you back into the hallway and prepare a seating chart." *See* RR, Vol. 5, pg. 43. The jury panel was ushered out. *See* RR, Vol. 5, pg. 44.

### Motion for Mistrial and Subsequent Hearing.

While the jury panel was out in the hallway waiting to come into the courtroom, the trial judge remarked that "when Mr. Finch was brought up after lunch to come into the courtroom for jury selection, that he was wearing handcuffs and leg irons and that he was moved through the jury panel as it waited in the hallway from the elevator into the bailiff's office." *See* RR, Vol. 5, pg. 47. When the trial court recognized "Mr. Turner" (i.e. David C. Turner, Jr.) (RR, Vol. 5, pg. 2), defense counsel made a motion for mistrial. *See* RR, Vol. 5, pg. 47.

The trial court then proceeded "to take some testimony on this" (RR, Vol. 5, pg. 47) and heard from two witnesses: (1) Sampson Peralta (Peralta), a jailer with the Lamar County Sheriff's Department, and (2) Ron Byers, the

-5-

bailiff for the district court. *See* RR, Vol. 5, pgs. 48, 54. Both sides and the trial judge asked questions of Peralta (RR, Vol. 5, pgs. 48-53) and of Byers. *See* RR, Vol. 5, pgs. 54-56.

After the trial court excused the witness (Byers), defense counsel for Finch made a motion for mistrial again, and the State responded. *See* RR, Vol. 5, pgs. 57-58. The trial court took the motion under advisement. *See* RR, Vol. 5, pg. 58.

The trial court brought the jury panel into the courtroom. *See* RR, Vol. 5, pg. 59. The trial judge then asked the panel, as follows:

> I need to ask the panel a question, and you can just show me by raising your hand as way of response. How many of you saw the Defendant walking from the elevator to the bailiff's office? Got a good look at him. Just raise your hand.
>
> Okay. I need everybody who raised their hand to stay here in the courtroom. I need everyone else who did not raise their hand to step out into the lobby. Don't go far, okay, cause I think we'll be back in here in a minute. But everyone who just raised their hand, stay here.
>
> (A portion of the panel was ushered out at 2:24 p.m.)
>
> (Off-the-record discussion from 2:24 p.m. to 2:25 p.m.)
>
> THE COURT: All right. Let's go back on the record. And the record should reflect -- and, Mr. Turner, you join me in this observation if you wish -- there are approximately 20 people remaining in the courtroom who indicated they saw the Defendant walking from the elevator into the bailiff's office.

-6-

> Now I intend to talk to these individual -- these jurors individually to see if we have any issues.
>
> (Beginning of at-the-bench- discussions.)

*See* RR, Vol. 5, pg. 60.

During "at-the-bench discussions," the trial court conversed with several venire persons. *See* RR, Vol. 5, pgs. 60-105. Afterwards, the trial court asked "each of you to go stand back in the hallway again." *See* RR, Vol. 5, pg. 105. Through defense counsel, Finch renewed his motion for mistrial (RR, Vol. 5, pg. 105), which the trial court then denied. *See* RR, Vol. 5, pg. 106. Afterwards, the trial judge addressed the venire panel and proceeded with jury selection on the afternoon of September 29, 2014. *See* RR, Vol. 5, pgs. 106-107.

At the end of the voir dire proceedings, the trial court impaneled a petit jury of twelve jurors and two alternate jurors. *See* RR, Vol. 5, pgs. 131-132; CR, pg. 86. The trial court then dismissed the remaining venire persons. *See* RR, Vol. 5, pg. 132.

**<u>Guilt-Innocence Phase of the Jury Trial</u>.**

On September 30, 2014, the trial court commenced the guilt-innocence phase of the jury trial with instructions to the jury. *See* RR, Vol. 6, pgs. 23-29. The State read the charging instrument. *See* RR, Vol. 6, pgs.

30-31.  Finch entered a plea of "not guilty" and a plea of "not true" to the enhancement allegations.  *See* RR, Vol. 6, pg. 31.  Later, Finch stipulated to the admissibility of the two prior theft convictions.  *See* RR, Vol. 6, pgs. 70-72.

During the direct-examination of officer Upchurch, he identified Finch as the defendant in open court.  *See* RR, Vol. 6, pg. 63.  During the testimony of Detective Foreman, the recorded interview of Finch was also published to the jury.  *See* RR, Vol. 6, pg. 85; State's Exhibit 9.

Following the testimony of Detective Foreman (RR, Vol. 6, pg. 89), the State proffered a "Stipulation of Evidence" (State's Exhibit 12) to prove the two prior theft convictions, as alleged in the indictment.  *See* CR, pg. 5.  The trial court admitted the "Stipulation of Evidence."  *See* RR, Vol. 6, pgs. 90-91; State's Exhibit 12.  The State then rested.  *See* RR, Vol. 6, pg. 92.

The defense also rested.  *See* RR, Vol. 6, pg. 97.  Both sides rested and closed.  *See* RR, Vol. 6, pg. 97.

The trial court heard no objections to its jury charge (RR, Vol. 6, pg. 97), and proceeded to read the charge to the jury.  *See* RR, Vol. 6, pgs. 99-109; CR, pgs. 87-92.  After closing arguments (RR, Vol. 6, pgs. 109-117), the jury retired to begin its deliberations.  *See* RR, Vol. 6, pg. 117.

Upon concluding its deliberations, the jury returned its verdict that found Finch guilty of the offense of theft of property less than $1,500.00 with two prior convictions. *See* RR, Vol. 6, pg. 133; CR, pg. 93. The jury also found all of the prior convictions were true, as alleged in the indictment. *See* RR, Vol. 6, pg. 133.

**Punishment Phase.**

The trial court moved into the punishment phase of the trial. *See* RR, Vol. 6, pg. 134. The State proffered the testimony of Kristin Moore Rosson (RR, Vol. 6, pgs. 136-143), Detective Derek Belcher (RR, Vol. 6, pgs. 144-148) and Angie Rosson (Angie Rosson). *See* RR, Vol. 6, pg. 148.

When the State called Angie Rosson as a witness (RR, Vol. 6, pg. 148), the following exchange occurred:

> THE COURT: She was around here a moment ago.
>
> MS. HAIRSTON: No, she's right there.
>
> MR. TURNER: Oh, is she? Well, then she's in violation of the Rule, Your Honor. We'd object to any testimony of this woman. We put her under the Rule.
>
> THE COURT: And she's been sitting here since the punishment phase began.
>
> MR. TURNER: She's been sitting here apparently when --

THE COURT: She's your -- she's your witness.

MR. TURNER: I understand, Your Honor, but she's calling the witness, and this was one of the reasons I wanted her under the Rule.

THE COURT: I know, but she's been sitting right behind your client for the better part of the past hour.

MR. TURNER: And I was not aware of it, Your Honor.

THE COURT: I'm going to overrule the objection.

*See* RR, Vol. 6, pg. 149.

Over Finch's objection, the State proceeded with the direct examination of Angie Rosson. *See* RR, Vol. 6, pg. 151. Following the testimony of Angie Rosson (RR, Vol. 6, pgs. 151-167), the State recalled Detective Moore as a witness. *See* RR, Vol. 6, pg. 167. Following the testimony of Detective Moore (RR, Vol. 6, pgs. 167-172), the State proffered State's Exhibits 10, 11 and then 13 through 27, which the trial court admitted. *See* RR, Vol. 6, pg. 172. After publishing these exhibits to the jury, the State rested. *See* RR, Vol. 6, pg. 176.

The defense began its case-in-chief by calling George Young as a witness, who testified that he knew Finch. *See* RR, Vol. 6, pgs. 176-182. Next, the defense called Allison Bunch Finch, who testified as the appellant's wife. *See* RR, Vol. 6, pgs. 182-187. Then, the defense called

Mark Annette, who testified as a detention officer at the Lamar County jail. *See* RR, Vol. 6, pgs. 188-191. The defense also called Matt Martin Mcada as a witness. *See* RR, Vol. 6, pg. 191.

After a brief recess of the trial proceedings, Finch testified on his own behalf. *See* RR, Vol. 6, pg. 203. Following his testimony (RR, Vol. 6, pgs. 203-220), the defense rested. *See* RR, Vol. 6, pg. 220. With no rebuttal evidence, the State rested and closed. *See* RR, Vol. 6, pg. 220.

After hearing no objections, the trial court read its punishment charge to the jury. *See* RR, Vol. 6, pgs. 221-225; CR, pgs. 96-98. Following closing arguments (RR, Vol. 6, pgs. 226-229), the jury retired to begin its deliberations. *See* RR, Vol. 6, pg. 229. Upon the conclusion of its deliberations, the jury returned an unanimous verdict. *See* RR, Vol. 6, pgs. 234-235; CR, pg. 101.

By its verdict, the jury assessed punishment at two (2) confinement in the Texas Department of Criminal Justice -- State Jail Division with a fine of $10,000.00. *See* RR, Vol. 6, pg. 234; CR, pg. 99. The trial court discharged the jury at the conclusion of the jury trial. *See* RR, Vol. 6, pg. 235. The trial court pronounced sentence. *See* RR, Vol. 6, pg. 236.

On September 30, 2014, the trial court signed its Judgment of

Conviction by Jury. *See* CR, pgs. 109-110. On the same day, the trial court signed its Certification of Defendant's Right of Appeal. *See* CR, pg. 107. Finch also filed his notice of appeal. *See* CR, pg. 104.

**Proceedings in this Court of Appeals.**

On or about October 6, 2014, Finch filed his notice of appeal in this Court. The District Clerk of Lamar County filed the Clerk's Record on or about November 7, 2014. The official court reporter filed a motion for extension of time to file the Reporter's Record, which this Court granted. The court reporter then filed the Reporter's Record on or about December 29, 2014. The exhibits were filed on or about January 5, 2015.

With the filing of the appellate record, Finch filed his first (and only) motion for extension of time to file his brief on January 26, 2015, which this Court granted on February 3, 2015. Finch filed his brief on or about February 23, 2015.

On or about March 25, 2015, the State filed its first (and only) motion for extension of time to file its brief, which this Court granted on March 31, 2015. The State filed its brief on April 16, 2015.

## SUMMARY OF THE ARGUMENT

With two (2) issues/points of error, Finch alleged that (1) the trial court erred in failing to grant a mistrial after jurors saw Finch in shackles in violation of his rights under the United States and Texas Constitutions; and (2) the trial court erred when it allowed a State's witness to testify who had observed other testimony in violation of "the Rule." This Court should overrule the appellant's, Finch's, two issues/points of error, and affirm for the following reasons:

(1) The trial court did not abuse its discretion in denying the appellant's motion for mistrial because Finch's encounter with potential jurors was "inadvertent, fortuitous and away from the courtroom." There was no error, and there was no harm.

(2) The trial court did not abuse its discretion in allowing the appellant's mother, Angie Rosson, to testify because the trial court balanced the interests of the State and the accused, considered alternative sanctions and considered the benefit and detriment of witness disqualification. Even if Finch could prove both prejudice prongs, his substantial rights were not affected, given his prior convictions and criminal history.

Therefore, the issues/points of error should be overruled.  The trial court's final judgment of conviction should be affirmed.

## ARGUMENT AND AUTHORITIES

**ISSUE PRESENTED IN REPLY NO. 1:**   **WHEN POTENTIAL JURORS SAW FINCH UNDER PHYSICAL RESTRAINT OUTSIDE THE COURTROOM, THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE APPELLANT'S MOTION FOR MISTRIAL BECAUSE SUCH AN ENCOUNTER WAS INADVERTENT, FORTUITOUS AND AWAY FROM THE COURTROOM; THERE WAS NO ERROR, AND THERE WAS NO HARM.**

A.       **Standard of Review:  Abuse of Discretion.**

With his first issue on appeal, Finch alleged that the trial court erred in failing to grant a mistrial after jurors saw him in shackles in violation of his rights under the United States and Texas Constitutions.  *See generally* Appellant's Brief, pgs. 11-14.  However, the trial court did not abuse its discretion because jurors saw Finch under physical restraint outside the courtroom.  *See Pina v. State*, 38 S.W.3d 730 (Tex. App.--Texarkana 2001, pet. ref'd).

A trial court's denial of a mistrial is reviewed for an abuse of discretion.  *See Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009).  An appellate court views the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time

of the ruling. *See id* (citing *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004)). The ruling must be upheld if it was within the zone of reasonable disagreement. *See id.*

A mistrial is an appropriate remedy in "extreme circumstances" for a narrow class of highly prejudicial and incurable errors. *See id* (reference to footnote omitted) (citing *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000)). A mistrial halts trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *See Ocon*, 284 S.W.3d at 884 (citing *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). Whether an error requires a mistrial must be determined by the particular facts of the case. *See id.*

B. **The Trial Court Did Not Abuse its Discretion in Denying the Appellant's, Finch's, Motion for Mistrial.**

In *Pina*, a capital murder case, the appellant "was taken from the courthouse in handcuffs and taken through a number of jurors." *See Pina*, 38 S.W.3d at 740. In *Pina*, the appellant made an oral motion for mistrial during voir dire, which the trial court denied. *See id.* In the last of six (6) issues on appeal in *Pina*, the appellant contended that the trial court erred in denying his motion for a mistrial. *See id.* at 733, 740.

-15-

In *Pina*, this Court affirmed and found "no basis to conclude that the trial court abused its discretion." *See id*. at 741. This Court reasoned:

> There was no obvious physical restraint on Pina in the courtroom during the trial in the presence of the jury. The rules are different where jurors see a defendant under physical restraint *outside* the courtroom. If such encounters are inadvertent, fortuitous, and away from the courtroom, there is no error. . . .
>
> We also find no harm. The two jurors who said they saw Pina outside the courtroom in handcuffs were removed from the panel. Since the other two testified that they did not see Pina in handcuffs outside the courtroom, there was no harm in failing to disqualify them. No other jurors were questioned, and no further relief was requested.

*See id*. at 741 (italics added in the opinion).

In applying the *Pina* rationale to the present facts and circumstances, Finch's first issue/point of error should be overruled for two (2) reasons:

**1.      Finch's Encounter with Potential Jurors Was "Inadvertent, Fortuitous, and Away from the Courtroom," So There Was No Error.**

As the first reason, there was no obvious physical restraint on Finch in the courtroom during the trial in the presence of the jury. *See id*. As this Court stated in *Pina*, "[t]he rules are different where jurors see a defendant under physical restraint *outside* the courtroom." *See id* (italics added in the opinion).

Here, Finch was under physical restraint *outside* the courtroom. *See id* (italics added in the opinion). In this appellate record, the trial judge remarked that Finch "was wearing handcuffs and leg irons and [] he was moved through the jury panel as it waited in the hallway from the elevator into the bailiff's office." *See* RR, Vol. 5, pg. 47. Sampson Peralta, the jailer with the Lamar County Sheriff's Department, testified that it was "a minute" between the time he left the elevator and the time he went inside the bailiff's office. *See* RR, Vol. 5, pg. 53. By this evidence, such an encounter with potential jurors was *outside* the courtroom and was "inadvertent, fortuitous, and away from the courtroom," so there was no error. *See Pina*, 38 S.W.3d at 741. *See also Coleman v. State*, 652 S.W.2d 205, 207 (Tex. App.--Houston [14th Dist.] 1982, pet. ref'd) (juror noticed appellant being brought out of the elevator in handcuffs but the "accidental glimpse" was not of such prejudicial effect as to have deprived appellant of a fair trial).

In conclusion, the trial court did not abuse its discretion in denying Finch's motion for mistrial. *See Ocon*, 284 S.W.3d at 884. Viewing the evidence in the light most favorable to the trial court's ruling, the trial court could have found that Finch's encounter with potential jurors was "inadvertent, fortuitous and away from the courtroom", so there was no

-17-

error.  *See Pina*, 38 S.W.3d at 741.  Thus, the trial court's ruling in denying Finch's motion for mistrial was certainly within the zone of reasonable disagreement, and should be upheld.  *See Ocon*, 284 S.W.3d at 884 (citing *Wead*, 129 S.W.3d at 129).

2.    **No Harm.**

As the second reason, Finch could not show harm.  *See id*.  In his brief, Finch alleged that "[f]ive of the jurors chosen--nearly half of the jury-- saw Finch in shackles.  *See* Appellant's Brief, pgs. 13-14.  But prior to jury selection, the trial court exercised its discretion and allowed both sides to interview jurors prior to the trial to determine which members had witnessed Finch in handcuffs.  *See* RR, Vol. 5, pg. 60 ("And the record should reflect -- and, Mr. Turner, you join me in this observation if you wish -- there are approximately 20 people remaining in the courtroom who indicated they saw the Defendant walking from the elevator into the bailiff's office.").  *See also Boyington v. State*, 787 S.W.2d 469, 471 (Tex. App.--Houston [14th Dist.] 1990, pet. ref'd).

Both sides questioned these potential jurors (RR, Vol. 5, pgs. 60-105) for the purpose of excluding any members who may have viewed him in

handcuffs or shackles.  *See Garza v. State*, 10 S.W.3d 765, 767 (Tex. App.--Corpus Christi 2000, pet. ref'd).

Subsequently, however, Finch did not attempt any showing of harm or prejudice, *see id*, by requesting additional strikes or other relief prior to "five of the jurors [being] chosen."  *See* Appellant's Brief, pg. 13; *Pina*, 38 S.W.3d at 741 ("[n]o other jurors were questioned, and no further relief was requested.").  Further, Finch did not attempt any showing of harm or prejudice by making a "request to have an instruction given to the jury panel, or the jury after it was impaneled."  *See Garza*, 10 S.W.3d at 767-68.

In conclusion, (1) there was no error; and (2) there was no harm.  For either of these reasons, Finch's first issue/point of error should be overruled.

**ISSUE PRESENTED IN REPLY NO. 2:  THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DECIDING TO ADMIT THE TESTIMONY OF THE APPELLANT'S MOTHER, ANGIE ROSSON, BECAUSE IT BALANCED THE INTERESTS OF THE STATE AND THE ACCUSED, CONSIDERED ALTERNATIVE SANCTIONS AND CONSIDERED THE BENEFIT AND DETRIMENT ARISING FROM A DISQUALIFICATION IN LIGHT OF THE NATURE AND WEIGHT OF THE TESTIMONY TO BE OFFERED; IN THE ALTERNATIVE, FINCH COULD NOT SHOW HARM.**

A.      **Standard of Review:  Abuse of Discretion.**

When the State called Angie Rosson as a witness during the punishment phase, Finch objected on the basis that "Well, then she's in

violation of the Rule, Your Honor. We'd object to any testimony of this woman." *See* RR, Vol. 6, pg. 149. In overruling this specific objection (RR, Vol. 6, pg. 149), the trial court did not abuse its discretion because if a witness violated the witness sequestration rule, the trial court still had discretion to allow testimony from the witness. *See Martinez v. State*, 186 S.W.3d 59, 65 (Tex. App.--Houston [1ˢᵗ Dist.] 2005, pet. ref'd) (citing *Bell v. State*, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996)).

B.    **The "Witness Sequestration Rule" and Article 36.06 of the Texas Code of Criminal Procedure.**

Rule 614 of the Texas Rules of Evidence provided in pertinent part that "[a]t a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony[,] [o]r the court may do so on its own." *See* Tex. R. Evid. 614. This "witness sequestration rule" was once discretionary with trial court, but its application is now mandatory upon proper request. *See Bryant v. State*, 282 S.W.3d 156, 161 (Tex. App.--Texarkana 2009, pet. ref'd); *Wilson v. State*, 179 S.W.3d 240, 248 (Tex. App.--Texarkana 2005, no pet.) (citing *Moore v. State*, 882 S.W.2d 844, 848 (Tex. Crim. App. 1994)). A trial court errs if it fails to enforce a proper invocation of the witness sequestration rule. *See Bryant*, 282 S.W.3d at 161 (citing *Russell v. State*, 155 S.W.3d 176, 181 (Tex. Crim. App. 2005)).

-20-

However, if error is shown, it is a "violation of an evidentiary rule, the error is non-constitutional, and will be disregarded unless it affected the appellant's substantial rights." *See id* (citing Tex. R. App. P. 44.2(b)).

Once Rule 614 is invoked, witnesses are instructed by the court that they cannot converse with one another or with any other person about the case, except by permission from the court. *See Martinez*, 186 S.W.3d at 65. *See also* Tex. Code Crim. Proc. Ann. art. 36.06 (Vernon 2007). Again, a trial court's decision to admit testimony from a witness (even if that witness has heard others testify during the trial in violation of the witness sequestration rule) is reviewed for abuse of discretion. *See Bryant*, 282 S.W.3d at 161 (citing *Guerra v. State*, 771 S.W.2d 453, 474 (Tex. Crim. App. 1988); *Taylor v. State*, 173 S.W.3d 851, 853 (Tex. App.--Texarkana 2005, no pet.); *Potter v. State*, 74 S.W.3d 105, 110 (Tex. App.--Waco 2002, no pet.)).

D.   **Determining Harm or Prejudice.**

Determining harm or prejudice by a witness's violation of Rule 614 is based on whether the witness's presence during other testimony resulted in harm to the defendant. *See Bryant*, 282 S.W.3d at 161 (citing *Webb v. State*, 766 S.W.2d 236, 240 (Tex. Crim. App. 1989); *Guerra*, 771 S.W.2d at 474-

75; *Wilson*, 179 S.W.3d at 248-49)).  "Injury to the defendant is shown when two criteria are met:  (a) whether the witness actually conferred with or heard testimony of other witnesses, and (b) whether the witness' testimony contradicted testimony of a witness from the opposing side or corroborated testimony of a witness with whom he or she had conferred or heard."  *See Bryant*, 282 S.W.3d at 161-62 (quoting *Webb*, 766 S.W.2d at 240).  The appellant has the burden to demonstrate the record supports a finding under both prongs.  *See Bryant*, 282 S.W.3d at 162 (citing *Taylor*, 173 S.W.3d at 853).

E.    **Application of Law to the Alleged Violation of the Witness Sequestration Rule in the Present Case.**

1.    **The Trial Court Did Not Abuse its Discretion in Admitting Testimony from Angie Rosson.**

Even if "the Rule" was violated, the trial court still had discretion to allow testimony from this witness.  *See Martinez*, 186 S.W.3d at 65 (citing *Bell*, 938 S.W.2d at 50).  In *Webb*, the Texas Court of Criminal Appeals explained that when a trial court decides whether to disqualify a witness under the Rule, the trial court must balance the interests of the State and the accused, consider alternative sanctions, and consider the benefit and detriment arising from a disqualification in light of the nature and weight of

the testimony to be offered. *See Webb*, 766 S.W.2d at 244. *See also Routier v. State*, 112 S.W.3d 554, 590 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 1040, 124 S.Ct. 2157, 158 L.Ed.2d 728 (2004).

In the present case, the violation of "the Rule" involved Angie Rosson, who the trial judge knew as the appellant's mother because she wanted to watch the jury selection. *See* RR, Vol. 5, pg. 45. Here, the trial court was also "aware of her presence in the courtroom," as Finch contended in his brief, because the trial judge remarked, "[s]he was around here a moment ago" and "she's been sitting here since the punishment phase began." *See* RR, Vol. 6, pg. 149; Appellant's Brief, pg. 13. However, the trial court could have still decided to admit the testimony from Angie Rosson, after balancing the interests of the State and the accused. *See Webb*, 766 S.W.2d at 244; *Routier v. State*, 112 S.W.3d at 590. The trial court could have balanced the interests of the State, which called Angie Rosson as a witness, and the accused, who may have relied on his mother's testimony as potential mitigation evidence. *See id*.

In allowing Angie Rosson to testify, the trial court could have considered alternative sanctions to disqualification because practically speaking, the jury would have wanted to hear testimony from Finch's

mother during the punishment phase. *See id*; RR, Vol. 6, pg. 149. In considering the benefit and detriment arising from a disqualification of Angie Rosson as a witness, the trial court could have decided, in the exercise of its sound discretion, not to deprive Finch of potential mitigation evidence from the appellant's mother during the punishment phase of the trial. *See id*. This decision should not be disturbed merely because the State was "calling the witness, and this was one of the reasons [defense counsel] wanted her under the Rule." *See* RR, Vol. 6, pg. 149.

2.     **In the Alternative, Finch Could Not Show Harm, Given his Prior Convictions and Criminal History.**

Even if Finch carried his burden to support a finding of harm under both prongs, *see* appellant's brief, pgs. 16-17, the theft of the power drill was merely one extraneous offense, when compared to a "Stipulation of Evidence" that proved two (2) prior theft convictions beyond a reasonable doubt. *See* RR, Vol. 6, pgs. 90-91; State's Exhibit 12. Aside from the theft of the power drill, the State introduced Finch's other convictions, so it would be difficult to articulate how the extraneous theft offense of the power drill affected the appellant's substantial rights, when compared to Finch's other convictions. *See* Tex. R. App. P. 44.2(b). Because the extraneous offense involving the theft of the power drill did not affect the appellant's substantial

rights, Finch could not show harm. Accordingly, the appellant's, Finch's, second issue/point of error should be overruled.

## **PRAYER**

WHEREFORE PREMISES CONSIDERED, the State of Texas prays that upon final submission without oral argument, this Court order the trial court clerk to supplement the appellate record to include a certified bill of costs; and then affirm the trial court's final judgment of conviction, adjudge court costs against the appellant, and for such other and further relief, both at law and in equity, to which it may be justly and legally entitled.

Respectfully submitted,

Gary D. Young
Lamar County & District Attorney
Lamar County Courthouse
119 North Main
Paris, Texas 75460
(903) 737-2470
(903) 737-2455 (fax)

By:_____
    Gary D. Young, County Attorney
    SBN# 00785298

**ATTORNEYS FOR STATE OF TEXAS**

-25-

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure, the "Appellee's (State's) Brief" was a computer-generated document and contained 6491 words--not including the Appendix, if any.  The undersigned attorney certified that he relied on the word count of the computer program, which was used to prepare this document.

_____

GARY D. YOUNG
gyoung@co.lamar.tx.us

## CERTIFICATE OF SERVICE

This is to certify that in accordance with Tex. R. App. P. 9.5, a true copy of the "Appellee's (State's) Brief" has been served on the 16th day of April, 2015 upon the following:

> Don Biard
> McLaughlin Hutchison & Biard LLP
> 38 First Northwest
> Paris, TX   75460

_____

GARY D. YOUNG
gyoung@co.lamar.tx.us